## Riverton Coal Company v. John E. Shepherd and Riverton Coal Company v. Charles L. Shepherd, by his next friend.

1.   HYPOTHETICAL QUESTION—*how to be objected to.*   An objection to a hypothetical question, upon the ground that it does not contain all the elements upon which a witness should base his opinion, should specifically point out the omission or omissions in order to avail upon appeal.

2.   MOTION TO TAKE CASE FROM JURY—*what questions raised by.*   A motion to take a case from the jury, made at the close of the plaintiff's case, or at the close of all of the evidence, presents the naked legal question as to whether or not there is any evidence in the record fairly tend-

Riverton Coal Co. v. Shepherd.

ing to support the plaintiff's cause of action, but it never raises a question as to the weight of the evidence.

3. SAFE PLACE TO WORK—*knowledge of the master with respect to.* A master is presumed to know of the unsafe conditions surrounding the place where his servants are placed at work, but whether such dangers are known to the servant, and whether they assume the attendant risks, are questions of fact to be submitted to the jury.

4. ASSUMED RISKS—*what are not.* A servant does not assume risks not ordinarily connected with his service and which arise from the failure of the master to exercise reasonable care.

5. WILFUL VIOLATION—*what is a, of a statutory duty.* Any conscious omission or failure to comply with a statutory duty provided for the protection of persons employed in mines, is a wilful violation.

6. WILFUL VIOLATIONS—*what are, of statutory duties.* The failure of a mine owner, with notice, to remedy defective conditions in a mine, the neglect of the mine examiner to report unsafe conditions, to mark the places, and make a report thereof, are conscious omissions, and, therefore, wilful violations of the Mining Act of this state.

7. NOTICE—*what is, to a mine owner, of defective conditions.* Notice to a mine manager and to a mine examiner, or to either of them, is notice to a mine owner.

8. CONTRIBUTORY NEGLIGENCE—*when not a defense.* Contributory negligence upon the part of an employee of a mine is not a defense to an action for personal injuries brought by him, based upon a wilful violation by the mine owner of the duties imposed by statute.

9. VERDICT—*when not excessive.* A verdict for $5,000 is not excessive, where the evidence tends to show that the plaintiff was burned on his hips, hand and face; that all the skin on his forehead, and from his forehead to his chin, came off; that he remained in a hospital under a doctor's care for about six weeks; that since the accident, he has had no strength in his hands and cannot shut them; that his bones are sore; that his eyesight is impaired so that he reads with difficulty; that his hands continually sting and the scar on his face burns and itches; that during the healing process, his pain was severe, and that he has, ever since the accident, been incapacitated to work.

10. JUDGMENT—*when not excessive.* A judgment for $1,500 is not excessive where the evidence tends to show that the plaintiff was burned on his hands, face and left ear; that he has suffered facial disfigurement; that the grip of his hands is gone and their use otherwise impaired; that he was in a hospital under a doctor's care for about three weeks; that he suffered pain, and that his disability is permanent.

Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed October 12, 1903.

CONKLING & IRWIN, for appellant.

ROBERT H. PATTON and JAMES E. DOWLING, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

These are separate actions on the case, brought by appellees against appellant, to recover damages for personal injuries alleged to have been by them sustained through the negligence of appellant in the operation of its coal mine, in which appellees were employed as miners. By agreement, the causes were tried together, and the pleadings and evidence are the same in each case. The trial resulted in a judgment in favor of appellee John E. Shepherd for $5,000, and in favor of appellee Charles L. Shepherd for $1,500, from which judgments the defendant appeals.

The first count of the declaration is a common law count and alleges that it was the duty of appellant to keep the galleries, entries, rooms and roadways therein supplied with air and free from dust so as to be reasonably safe for employees of appellant to work in; that appellant neglected its duty, and that there accumulated in the mine where appellees worked, explosive gases, which on account of lack of sufficient air and the presence of dust at said place in said mine, became dangerous and explosive; that appellee was in the employ of appellant as a miner, and while exercising due care and caution, was awaiting in an entry adjacent to his working place the explosion of a shot prepared by him; that the shot was fired, and that because of the concussion of the air and because of the air and gases in said entry, the said gases exploded and thereby appellee was thrown to the ground and greatly burned, etc.

The second count is statutory, and alleges that appellant wilfully neglected, in violation of the statute, to have regularly and thoroughly sprayed, sprinkled or cleaned certain galleries, roadways or entries in the vicinity of the place where plaintiff worked in said mine, at a time when the same were so dry that the air was charged with dust; alleges firing of shot, etc., and that by reason of said negligence, the said air in said entry and the accumulation of

gases and dust therein, a violent explosion was caused, whereby plaintiff was injured, etc.

The third count is also statutory, and alleges specifically a wilful neglect of a number of the duties in regard to ventilation prescribed by section 18 of the statute (R. S. 1901, p. 1214), and also specifically charges that the door at the junction of a certain cross-cut and the second entry west of appellee's room, had for a long time been made of cloth and formed the only curtain across said cross-cut; that said curtain was, on the date aforesaid, and had been for some time prior thereto, torn so that it did not automatically perform the functions of a door in guiding and directing the ventilating currents, etc.; that because of the condition of the air and gases in said entry by the aforesaid negligence of appellant, there was produced a violent explosion in said entry, etc.

The fourth count is also statutory, and charges a wilful failure of appellant, through its mine examiner, to visit the mine before the men were permitted to enter the same, and report certain unsafe conditions, and to place a mark thereat with notice to the men to keep out, and to report his findings to the mine manager, and to make a record of the conditions of the mine before the men were permitted to enter, etc.

The facts which the evidence tends to prove are substantially as follows: On Tuesday, March 18, 1902, appellant was operating a coal mine at Riverton, Illinois, and appellee John E. Shepherd, was in its employ as a miner. Working with him in the same room was his son, Charles L. Shepherd, the other appellee, aged seventeen years. They were working on the south side of the mine in room No. 4, on the north side of the "second east front" entry, and had been working in this room from about the first day of December, 1901. This room was about thirty-one feet wide, and had been worked in until the north end or face of the room was about thirty-five feet north from the north side of the entry. The mouth of the room opening off the entry was about eighteen feet wide, for a distance of nine

feet, and then the room was widened out on each side at an angle of about forty-five degrees, to a width of thirty-one feet. At the entry, the mouth of the room did not run at right angles with the entry but the corners were rounded off.

During the day, appellees placed a shot, prepared for firing, just west of the center and in the face of the room, and another in the northeast corner. At firing time the shots were lighted by appellees, who then ran out of the room to a point in the center of the entry about eighteen feet west of the center of the mouth of the room, where they were standing when the shots went off. These shots in going off threw out a large amount of flame, which ran out into the entry and burned and injured appellees.

(1)  During the trial, one Wenneborg, an expert miner, was asked by plaintiff a hypothetical question relating to the cause of the explosion. The defendant objected to the question as "not containing all the elements or bases upon which the witness should base his opinion." The objection was overruled, and the ruling of the court is urged as error. The objection failed to point out what elements were omitted. The question contained at least twelve different hypotheses and contained over 150 words. The trial judge had no means of knowing upon what supposed omission he was called upon to rule. We do not think that counsel, by the objection interposed, could cast upon the court the burden of scrutinizing each part of the question and then studying his minutes, or those of the court reporter, to ascertain whether some necessary element had been omitted from the question. Counsel should have pointed out what element he claimed was improperly omitted, so that if the court held the objection valid, plaintiff could have amended it. Cullen v. Traders' Ins. Co., 83 Ill. App. 44.

(2)  At the close of plaintiff's evidence, the defendant moved the court in each of said causes, to instruct the jury, under each of the several counts of the declaration, to find the issues for the defendant, offering a separate instruction to that effect as to each count thereof; which motion was overruled. At the close of all the evidence, said motion was renewed and again overruled.

" A motion to take a case from the jury at the close of plaintiff's evidence, or at the close of all the evidence, presents the naked legal question whether or not there is any evidence in the record fairly tending to support the plaintiff's cause of action, and it is never a question of the weight of the evidence." C. C. Ry. Co. v. Loomis, 201 Ill. 118.

Appellant contends that there is not sufficient evidence in the record tending to prove either count of the declaration, and that the peremptory instruction should have been given. One Long testified that on the day of the accident the air was bad in the entry, and appellees both testified that the air in their room was very poor; that their lamps burned very poorly, which the evidence tended to show indicated the presence of black damp. Several witnesses testified that there was considerable dust present in the entry in front of the room where appellees were working, composed of fire clay and coal which had accumulated from the tramping of the mules and the travel in the entry, and that when disturbed, it would rise very thick, and that this part of the mine had not been sprinkled or sprayed for two months. There was also evidence tending to show that the curtain which was at the cross-cut west of the place of the accident, and which was a permanent door used in guiding and directing the ventilating currents, was torn badly and had been in that condition for several days; that both the mine manager and mine examiner were notified that the curtain was out of repair and that the air was bad; that the bad air was occasioned, in part, at least, by the want of a proper door at the cross-cut, and that the bad air, together with the presence of the dust, caused the explosion by which appellees were injured; that the mine examiner had notice of the existence of such bad air and defective curtain, but that he made no record of the same as required by statute, and failed to mark the said room and entry unsafe.

Appellant further contends that even if the place was unsafe, appellant had no knowledge of the fact, and that appellees had, and by continuing to work there they assumed the risk. Appellant must be held to have known of the

unsafe conditions, through its manager and mine examiner, and whether appellees knew of the danger and thereby assumed the risk attendant thereon, and whether such risk was unreasonable or extraordinary, or whether it was such as was ordinarily connected with the service, were questions which should be submitted to the jury.

In order to charge a servant with contributory negligence, it must be shown that he knew the place where he does the work is dangerous. He does not assume risks which are not ordinarily connected with the service and which are due to a failure of the master to exercise reasonable care and prudence. Himrod Coal Co. v. Clark, 197 Ill. 518; C. & E. I. R. R. Co. v. Knapp, 176 Ill. 129.

" The rule that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes. The law is that the servant does not assume risks that are unreasonable or extraordinary, nor risks of the master's own negligence." City v. Kostka, 190 Ill. 135.

(3) Appellant insists that to recover under the statutory counts, a wilful violation of the statute must be proved, and that even if such violations were proved, there is no evidence tending to show that they were wilful. It has been repeatedly held that any conscious omission or failure to comply with the statute referred to, renders the operator of a mine liable for ensuing injuries. Donk Bros. Coal and Coke Co. v. Peton, 192 Ill. 41; Odin Coal Co. v. Denman, 185 Ill. 413; Carterville Coal Co. v. Abbott, 181 Ill. 495; Donk Bros. Coal Co. v. Stroff, 200 Ill. 483.

The witness Long, after referring to the condition of the air and the fact that the curtains used as doors, were defective, testified as follows:

" I complained about this to the mine manager. I asked Marsh, the mine manager, if he could not get a door in that back entry so it would make the air better. He said he would as soon as he could get the stuff. He did not have the stuff to put in there at that time. I asked Payne, the

mine examiner, one night, if something could be done about that air. He said he had done all he could do, that he had reported it. I asked him if he had made his report on the book; he said no, but he had gone to Marsh several times and done all he could; and I said. 'You make your report on that book and it will be done.' "

Payne, the mine examiner of appellant, testified, on cross-examination, as follows:

" I am not aware that Long asked me to make a note upon the book of the condition of that air and that door at that time, and advised me to do that so as to clear myself. I told him that I would make a report to the mine manager about it. In that connection he spoke of the condition of these curtains. That was part of the things that I said I had reported to the manager. I told the manager we had better put a door up there on the west—on the south. I didn't make any report of the condition of that curtain on that day."

Appellee John E. Shepherd, testified with reference to the curtains as follows:

" In the cross-cut, sixty feet west of our room, and con-necting the second east-front and back entries, there was a canvas curtain hung across the entry to stop the air and turn it the other way. There was a second curtain across the back entry, a little past the other side of the break-through. The former curtain was made out of three or four widths. The three widths were hung loose up like three sheets of paper hanging on a stick. They were fastened on top next to roof on a two by four and were separated. They had to be or you could not get through them with cars or mules. They remained in that condition since October 1. During that time this cross-cut had been used as a roadway through which to pull coal cars. The middle one in the mouth of the cross-cut, I think, was entirely torn down, and the middle one that was in the back entry, was torn half in two. That had been in that condition for three or four weeks previous to the accident to my knowledge, as near as I can recollect. Harry Payne was mine examiner. James Marsh was mine manager. I notified Marsh, also Payne, the mine examiner, of the condition of this doorway. I saw Marsh very frequently when I worked in the entry and room. I said, 'Mr. Marsh, can't you get some air down there? Why don't you put up those doors, so the air will come down there?' He says, 'I haven't any stuff to

make them out of. I have been trying to get them up for a long time, but I can't get them up.' He told me that frequently."

Notice to the mine manager and the mine examiner, or either of them, was notice to appellant of the defective condition of the curtains and of the existence of bad air, and the failure of appellant to remedy the defects, and the neglect of the examiner to report the unsafe conditions, to mark the place, and to make a record thereof, were clearly conscious omissions of the duties imposed upon appellant by the statute upon which these counts were based. As to said counts, the question of contributory negligence on the part of appellees does not arise, as it would constitute no defense. Coal Co. v. Rowatt, 184 Ill. 402.

We are of opinion that the evidence above detailed, fairly tended to prove each and every of the counts of the declaration, and that the refusal of the peremptory instructions was proper.

(4) Appellant further insists that the verdicts were contrary to the evidence. We think the evidence warranted the jury in finding that dust was present in the room and entry where appellees were working, and in large quantities; that such dust rose and filled the air whenever disturbed; that the same had not been sprayed or sprinkled for at least two months prior to the accident, and that quantities of bad air had accumulated in that part of the mine. Upon the question as to whether or not the presence of the dust and bad air occasioned or aggravated the explosion, the witness Wenneborg testified as follows: that he is a licensed mine manager of this state; has studied mining all his life; has been making that a specialty for about eight years; has worked as a practical miner in mines about eighteen years, blasting and mining coal, and has made a study of the different gases that accumulate in coal mines in this section. " *Black damp* is carbonic acid gas and is not explosive in its natural state; it is composed of two parts of oxygen and one part of carbon. It may be detected in a room by the light burning dimly. *White damp* is carbonic

acid gas, is composed of one part carbon and one part oxygen, and is combustible. The *black damp* is heavier than the *white damp*. *Black damp* may be converted into *white damp* by the withdrawal of one part of oxygen, or by the adding of one part of carbon. When there is an equal quantity of each in the air, *white damp* is produced, which is surely explosive. If there is black damp in a room, it could be converted into *white damp* by waste powder diffusing the coal dust into the air out of a room, which would add the carbon, and then a good supply of fresh air turned in on that would cause an explosion. Fire clay dust would cut no figure in the explosion, but the highly bituminous nature of the coal would furnish carbon to the black damp and cause an explosion and a good supply of fresh air, because it would be converted then from a *black damp* to a *white damp*, having received its proportion of carbon to make it so. A highly inflammable dust of any nature would aggravate such explosion and force it on and on, so that if met with other bodies properly mixed, it would continue an explosion throughout the mine."

In answer to a hypothetical question which purported to incorporate appellees' contention as to the facts—and we think it fairly did so—the witness stated that, in his opinion, the explosion in question was one of *white damp*.

Walton Rutledge, state mine inspector, called by appellant, testified that he visited this mine on January 16, 1902, and that he then ordered the company officials to remove the dust from the hallways and to sprinkle the roads, and put up canvas sheets in front of the rooms to throw the air into the rooms.

He further testified that " the force of the blast, when a shot is fired, if there is any very fine coal dust, will lift the dust from the bottom, and the flame going through it, the little particles of dust would take fire and that would increase the explosion, but this would depend upon its being raised into the air;" that he did not pretend to say but that " dust of the character we have in our coal mines here will aggravate the explosion where it is started from some

other source, if the dust is of a very fine nature, and not mixed with fire clay. Our dust here is generally mixed with fire clay. The mules work the fire clay up with their shoes, and the dust and fire clay become intermixed and the coal also that falls along the way. If the dust was raised and the flame came through it, the intense heat once imparted by the explosion from some other source, would extend it. The explosion once started, the presence of the dust will aggravate it by extending it."

While there is evidence to the contrary which tends to prove that the accident was the result of the improper placing of the shots by appellees, and the firing of two at one time, upon a review of all the evidence, we are unable to say that the jury was not warranted in finding that the accident was caused by the presence of the dry dust, and the failure to keep the mine properly ventilated, or that the negligence of appellant in these particulars was wilful negligence within the meaning of the statute.

(5)  Appellant contends that the damages awarded were excessive. Appellee John E. Shepherd testified that he was knocked down and burned on the hips, hands and face; that all the skin on his face from his forehead to his chin came off; that he was taken to the hospital and remained under Dr. Ryan's care for about six weeks; that he has not been able to do any work since; that he has no strength in his hands and cannot shut them, nor hold to nor grip anything; that the bones are sore; that his eyesight is affected so that he cannot read without great difficulty; that previous to this accident his eyes and hands were all right; that his hands still sting and burn every day; that the scar on the face continually itches, burns and stings; that during the healing process, the pain was almost unendurable; and that he was able previous to the accident to earn about $25 every two weeks.

Appellee Charles L. Shepherd. testified that he was knocked down and burned on his hands and face and left ear; that the marks were a very bad disfigurement of his face; that he has no grip with his hands; can use his right

hand pretty well, but the left one not so well; that he cannot straighten the little finger, and that he can fold his hands some better since using them.

Dr. Ryan testified that he attended both appellees at the hospital for three weeks; that they were burned badly; their hands burned quite severely and their faces were burned, and that they suffered more or less pain; that John E. Shepherd has contraction of the scar tissues of his hands that prevents any closing of the fingers, and that the stiffness may improve in time, and he may recover the use of his hands, but that it depends upon use and the pliability of the scar tissue.

The jury assessed the damages as to Charles L. Shepherd at $3,000, but upon the hearing of the motion for a new trial, a remittitur was entered to $1,500, for which sum judgment was rendered. Whether the damages as to John E. Shepherd are excessive depends largely upon the permanency of his disability. The jury evidently believed it to be permanent, in which event it would not be excessive.

The damages awarded to Charles L. Shepherd, since the remittitur, are not excessive.

There being no reversible error in the record, the judgments will be affirmed.

*Affirmed.*