## THE HENRIETTA COAL COMPANY

*v.*

## WILLIAM CAMPBELL.

*Opinion filed June 23, 1904—Rehearing denied October 15, 1904.*

1. MASTER AND SERVANT—*a mining company must keep roadways reasonably safe.* A mining company owes to its servants required to pass along the roadways and cross-cuts of the mine, the legal duty to keep the same in reasonably safe condition.

2. SAME—*effect of servant's knowledge of condition of a roadway.* A mule driver's knowledge of the condition of a roadway in a mine does not entail upon him the risk of unusual or new dangers, or dangers naturally incident to such conditions, unless it is shown that he was cognizant of those dangers.

3. SAME—*when failure to use seat in driving car in mine is not negligence.* Failure of a mule driver in a mine to use the seat provided by the company on the car is not necessarily negligence, where the superintendent, when instructing the driver how to drive the vicious mule which he was required to work with, walked beside the car instead of using the seat.

4. PLEADING—*when specific command of master may be proved though not alleged.* An allegation in a declaration in a personal injury case that plaintiff was in the exercise of due care, justifies the admission of evidence, as bearing upon the question, that plaintiff was acting in obedience to a specific order or command of the master.

5. EVIDENCE—*when it is proper to admit testimony of expert miners.* Whether certain conditions as to the roadway of a mine render it

safe or otherwise is a subject upon which it is proper to take the opinions of expert miners.

6. APPEALS AND ERRORS—*when the conduct of counsel will not work reversal.* Conduct of counsel during the trial will not work reversal unless it is clearly prejudicial, since such matters must rest largely in the discretion of the trial court.

*Henrietta Coal Co.* v. *Campbell,* 112 Ill. App. 452, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BUR-ROUGHS, Judge, presiding.

This suit is an action on the case brought by William Campbell, appellee, against the appellant coal company, a corporation, the plaintiff having been engaged in said mine as a driver.

The declaration consists of three counts, in all of which it is charged that on the 11th day of December, 1901, the plaintiff was in the employ of the defendant as driver. The first count charges the duty of the defendant to exercise due care to provide a reasonably safe place to work and a failure of defendant in this regard, and that it negligently permitted a large amount of "gob" to be and remain for a course of time close to the track along which the plaintiff was required to pass in the exercise of his duties, and that by reason of the same being too close to the track he was injured by his left foot being caught between the gob and the car. The second count charges that the defendant failed to provide a reasonably safe track and roadway in which plaintiff might perform his work as driver, and that the defendant, not regarding its duties, suffered a large rock or piece of slate to be and remain very close to said track, by reason whereof plaintiff was injured while in the exercise of due care, etc. The third count charges the duty of the defendant to provide a reasonably safe mule for plaintiff to drive; that it failed in this behalf, and, on the contrary, provided "a dangerous, unsafe and vicious mule;"

that all this the defendant knew or might have known by the exercise of due care; and it then charges that he was injured by his left foot being caught between the car and a rock or part of the gob alongside of the track while endeavoring to escape and avoid the mule, "the said mule having become unmanageable and then and there kicking and acting viciously." All of the counts aver the plaintiff, at the time of the injury, was in the exercise of due care and caution.

The case was submitted to a jury and a verdict was given for $2640, of which the court required a *remittitur* of $640, and judgment was entered for $2000. Defendant appealed to the Appellate Court, where the judgment of the lower court was affirmed, and now appellant prosecutes this further appeal.

With the general verdict the jury returned the following special findings:

1. "Did the plaintiff know that at this curve where he was injured, the gob and stone were so close to the track that the car touched it as it passed?—A. Yes.

2. "Did the plaintiff, knowing that this mule kicked, of his own will continue to drive him in this entry?—A. No.

3. "Did the plaintiff know that this mule usually kicked at the place where plaintiff was hurt, and that he might kick him, and with this knowledge did he continue voluntarily to work for defendant?—A. No."

The defendant asked for judgment on the special findings, notwithstanding the verdict. This motion was denied. Defendant also asked for peremptory instructions in its behalf, both at the close of plaintiff's evidence and again at the close of all the evidence.

The evidence in this record tends to prove that appellee, aged twenty-eight, was injured on December 11, 1901, while working as a driver for the appellant in its coal mine at Edwardsville, Illinois. Both bones of the leg were broken between the knee and ankle, the broken

ends protruding through the flesh. Appellee had been working in coal mines several years, but had been driving in this mine, and then only "off and on," for three months. He was injured on a Wednesday afternoon between one and two o'clock, having driven the mule complained of on Monday and Tuesday previous. It appears from the evidence that about a year prior to this accident the roof of appellant's mine had fallen down and caved in on the main south entry to such an extent that part of the entry was abandoned and a side entry or cross-cut turned off to get around the "fall." On account of the cave-in large quantities of slate, rock, rubbish and refuse matter accumulated and slid down towards the track, running along the cut-off or cross-entry. This surplus refuse, constituting the "gob," should have been removed and hauled out to abandoned rooms, if there was not sufficient space in the entry to properly take care of it. Men were specially employed for the purpose of cleaning up the track, removing the dirt therefrom, hauling it away and re-timbering entries. Where the roof caved in, along this cross-cut, a rock or clod about two and one-half or three feet square was leaned up against the side and near the track by the appellant's workmen. The coal cars or boxes passing along the track would touch and rub against this rock. At this point the dirt also accumulated on the track and "the cars would not go through easy." The place where appellee was injured was about three hundred feet from the bottom of the shaft, in the cross-cut running from the main south entry to the back of the south entry. Coming toward the bottom of the pit from the face of the coal, the solid wall of coal, called the "rib side," was to the left, and the refuse, called the "gob side," was on the right. The rock previously mentioned appears to have been placed in the position named, by one of appellant's workmen, who was, some time previous to the injury, sent to clean up the entry. As stated by the workman: "We went in there

to re-timber that entry and clean it up. It was in a very bad shape, and when we re-timbered it we put the gob upon each side as best we could, out of the way, but it was very close,—really too close to stay. There was a rock that was probably two and a half or three feet square, as near as I can remember, and we just put it outside of the track,—just so it would clear the rail." This gob would slip down, from time to time, and required frequent attention. Cars going past this place would cause the rubbish and slack in the gob to run down on the track, which had to be removed. Appellant's superintendent testified: "Where you have no room to put the gob you have to haul it out. In proper mining the gob is thrown on the side, if there is room, otherwise it should be taken out." In hauling a load of coal from the face, passing the place where appellee was injured, it was necessary to "slue" or pull the car around to the right to avoid striking the rib on the left side of the entry, so narrow was the roadway at that point, and in doing this the axle on the right-hand side of the car would rub against the aforesaid rock. The mule furnished appellee to drive seems to have been disposed to kick and balk on slight or no provocation, of which propensities the appellant company seems to have been fully apprised. On Saturday before the injury on Wednesday, appellant's superintendent asked the appellee to take and drive the mule complained of, and appellee said he would try, as he didn't want to be contrary, but if he couldn't drive him he desired to be relieved. On Monday morning Campbell began to drive the mule, but he acted so badly that on Tuesday evening he told the superintendent he was afraid of the mule and didn't want to drive him any more, and the superintendent said: "Go ahead and drive him; you are a damn fool for not driving him." The superintendent then took a rope, attached one end to the mule's halter and brought the other end back through a ring in the harness, and said to appellee, "You take this line in

your hand, and when the mule goes to kicking you jerk the line and that will stop him from kicking." Appellee says he again took the mule and drove as directed, and on Wednesday, while driving the mule, was injured in the manner described by him, as follows: "There was a rock or clod leaning up against the side of the track about two and a half or three feet square, and the boxes coming along there the axles would catch and rub it, and as I was coming around this turn it was hard pulling, and the dirt accumulated on there so much, kept it in bad shape, the cars would not go through easy. * * * I started to slue the box to keep it from catching the rib, to keep the mule from stopping, and there was a chunk or clod lying on the rail, and as I was stooping down I had this hand on the box and this one on the tail-chain, and as I went to reach, to catch the clod to keep it from stopping the box, he kicked back at me. I raised up and he started to kick again, and I jumped to one side to keep him from hitting me in the face, and as I jumped back I couldn't get this foot back far enough and the axle caught it there against the rock and squeezed the leg up. I had the line wrapped on my hand just as Mr. Grabruck showed me and had my hand on the tail-chain." When Grabruck showed the appellee how to drive the mule he walked, as appellee claimed he was doing. After appellee's injury he was laid up for about fifteen months. Prior to or at the time of the injury he was earning $2.10 per day.

Twenty-six instructions were given for the defendant and two for plaintiff. No question is made by appellant upon the instructions given for plaintiff below, nor is it complained by appellant that the court refused to give any instruction asked, save that directing a verdict in behalf of appellant. The contention here, as stated by appellant, is, that the evidence does not support the verdict and that the peremptory instruction should have been given.

TERRY & WILLIAMSON, for appellant.

BURTON & WHEELER, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

Counsel for appellant first contend that "the evidence does not support the verdict and the verdict should have been for the defendant," because the evidence does not show defendant to have been negligent and does show appellee to have been lacking in due care. The affirmance by the Appellate Court of the judgment of the trial court in this case conclusively settles all questions of fact, except in so far as it may be necessary to consider the evidence in disposing of appellant's charge that the testimony does not sustain the verdict.

As bearing upon the points raised and alluded to, the evidence shows that the main south entry of appellant's mine had caved in about a year prior to the accident in question, so that such entry was, partly at least, abandoned, and a cross-cut was constructed around this cave-in to connect with the back south entry. There is no question but that appellant owed to appellee, and all its servants required to pass along this cross-cut or roadway, a legal duty to maintain the same in a reasonably safe condition. Recognizing this obligation, the evidence shows some effort on the part of appellant to discharge the duty, and some two months before the accident it appears employees of appellant were sent into this entry to clean it up, and concerning which, one of them, D. T. Williams, testified as previously set out in the statement of this case. Concerning this roadway, William Dwire, another witness, testified that there was dirt piled up from the face of the coal; that it sloped down from the rib to the rail, and that there was nowhere to get out of the way; that he went along the place where plaintiff was hurt, about half-past three in the afternoon, and that at that time the box was still standing there. "We

had to brace ourselves to get around the box. I cannot say how far it extended. It was about two feet high. The rib was on one side and the gob on the other." On this point William H. Evans, another witness, testified: "I know the place where plaintiff was hurt. The gob was on the right-hand side going out. The pillar where the old entry wasn't worked fell in and the gob slipped down. The rock broke and slipped to the road. We had to put the left hand on the car there going out and guide ourselves with the right hand to get around the car to get on the track again. Mr. Campbell's car was standing in the entry when we came out. The first I learned that Mr. Campbell was hurt was when we came on top. The conditions I spoke of existed for about sixteen feet around the turn. I can't tell you the size of the rock. The rock had been there ever since I began working, in September." John Slave, another witness, testified: "I was working in the mine at the time plaintiff was hurt. Coming out I saw the box of coal that Mr. Campbell was driving, standing there. I knew the place since September before Mr. Campbell was hurt. There was lots of dirt there in the entry." John Micko testified: "I was working in this mine when plaintiff was hurt. I didn't notice the place much where Mr. Campbell was hurt, but there was gob along there. I know we had to crawl over it. We had to put our hand on the box to get by. I don't remember how close the track was to the gob. I came around there after Mr. Campbell was hurt. I had to put my hands on the box to get around."

One of the charges of the declaration was that the defendant failed to provide a reasonably safe track and roadway in which plaintiff might perform his work as driver. With such evidence in the record as the above as to the condition of this roadway, and considering the character of the mule appellee had to drive along it, requiring vigilance on the driver's part to keep the mule from balking and kicking, which it was inclined to do

when any impediment of even the most trivial nature was encountered by the cars, making them pull harder, we would not be warranted in setting aside this judgment on the ground that there is not sufficient evidence to sustain the allegation that appellant failed to provide for appellee a safe and suitable roadway.

Appellant also charges appellee with contributory negligence, with knowledge of all the conditions concerning his employment, and therefore of an assumption of all the risks involved. The evidence shows that appellee was requested on Saturday before the accident, which occurred on Wednesday, by the superintendent and manager of the appellant, to take the mule in question and drive, hauling coal along the roadway or entry spoken of. Appellee replied that he did not wish to be contrary and would take the mule and try him. This mule, the evidence conclusively shows, had a notorious reputation. When overloaded it would balk and on the slightest provocation it was known to kick. Appellee says that he took the mule on Monday and drove him that day and part of Tuesday, when he asked to be relieved of driving him. The manager said: "You go ahead and drive him; I want you to drive him." Appellee replied that he was afraid of the mule and did not want to drive him; that the mule was kicking all the time and cutting up, and that he couldn't do anything with him, and every time he came to the low place where there was a rock next to the east entry he would kick, and that once he had kicked himself loose and went to the bottom kicking, hitting the top and bottom all the way out, and still, he said, the manager told him to "go ahead and drive him." Appellee further said the manager had a conversation with him on Tuesday evening, and told him to drive the mule with a line that he fixed for him and the mule would be all right, and he went with him and showed him how he meant, and also called him "a damn fool" for not wanting to drive the mule.

As before stated, at the time of the accident appellee was going around a turn in the entry with a load of coal. The dirt had accumulated on the track or roadway so much that it was in bad shape and the cars would not "go through easy." Appellee started to "slue" or pull the box of coal to one side to keep it from catching the rib or side of the entry. Perceiving a chunk or clod of some kind on the rail, he reached down to remove it so as to prevent it stopping the car, one hand being on the car and the other on the tail-chain. At this point the mule began kicking, and appellee, endeavoring to save himself, tried to step to one side, but because of the rock already spoken of there was not sufficient space, and the axle of the car caught his foot against the rock. Under such circumstances we cannot sustain the contention of appellant that appellee was so guilty of contributory negligence or had so assumed all the risks of his employment as to require a judgment, entered on a verdict of a jury in appellee's behalf, to be set aside because of insufficient evidence to support it.

Suppose it be conceded that appellee knew of the mule's propensity to kick. Only a short time before this accident, after having asked to be relieved of driving the mule, appellant's foreman or manager had told him, "I want you to drive the mule," and "You are a damn fool for not wanting to drive him." Then the foreman had taken a rope and tied it to the mule's halter and directed appellee that by using this line he could manage the mule all right, and the inference is justifiably to be drawn from the evidence that appellee was honestly trying to carry out these orders and testing the plan suggested by his superior. Even though it be conceded that appellee was well acquainted with the condition of the roadway over which he drove, (and this assumption by no means necessarily follows from the evidence, considering the character of the mule appellee was driving and the natural presumption that his attention was neces-

sarily directed to the mule rather than the roadway,) and thereby assumed the. dangers incident to its contracted condition, yet this would not entail upon him the risks of unusual or new dangers, or even dangers naturally incident to such existing conditions, unless it be shown that appellee was cognizant of such dangers. It seems that at least one of the elements leading to the accident was the chunk or clod lying upon the rail. Appellee knew the propensity of the mule to balk and kick and judged that if this obstruction was not removed he would have trouble. He apparently was doing the best he could to avert such threatened danger and thereby occasioned another. The evidence shows that the gob and refuse were permitted to so accumulate along the side of this track that it was easy, for impediments to roll upon the rails, which it was appellant's duty to keep clear and which it was appellee's right to assume would be done.

It is said that appellee was negligent in not using a seat on which to ride, instead of walking, the company having provided seats for such purpose; but it is shown that when the superintendent instructed appellee how to drive the mule with a line, so as to avoid danger, he did not use the seat, and, so far as can be determined by the evidence, appellee was following the example set him.

The jury specially found in this case that appellee did not "of his own will continue to drive the mule in this entry," and that he did not "continue voluntarily to work for defendant." It is evident from these findings that the jury determined,—and there is evidence to justify such determination,—that the appellee was working pursuant to a special command of the master, and unless it can be said (which we deem it cannot be, in this case, and the jury did not so find,) that appellee acted as no reasonably prudent person would act under like circumstances, he did not assume the risks involved in carrying out, or attempting to carry out, such direct command.

*Chicago Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573;
*Illinois Steel Co.* v. *Schymanowski,* 162 id. 447; *Western Stone
Co.* v. *Muscial,* 196 id. 382; *Illinois Steel Co.* v. *Ryska,* 200 id.
280; *Hartrich* v. *Hawes,* 202 id. 334; *Offutt* v. *World's Colum-
bian Exposition,* 175 id. 472; *Slack* v. *Harris,* 200 id. 96.

Appellant contends that inasmuch as the jury found
by the first special finding that the plaintiff knew that
at the point of the injury the gob and stone were close
to the track, thus, as is contended, showing that he had
complete knowledge of the conditions of the roadway at
the place of the injury, it follows there could be no re-
covery under the first and second counts of the declara-
tion. In our judgment such deduction does not follow,
as is manifest from the preceding; nor do we regard such
finding inconsistent with the general verdict.

It is insisted by appellant that inasmuch as the dec-
laration did not aver a specific order or direction of ap-
pellant to appellee, it was therefore error to permit the
introduction of evidence tending to show the same. The
declaration does allege, however, that the appellee was
in the exercise of due care for his own safety, and we
perceive no error in permitting proof of all the circum-
stances tending to support that allegation, and it was
competent, under that allegation, for the appellee to
show, if he could, that he was ordered or directed to do
the work he was attempting to do and in the manner in
which he was endeavoring to do it, and then it was for
the jury to say whether, under such circumstances, ap-
pellee acted recklessly or otherwise.

Certain questions were asked expert miners as to
whether, in their judgment, certain conditions as to the
roadway rendered it safe or otherwise, and it is claimed
this was error, as the subject was one within the com-
mon observation of all men. We cannot say such was
the case. The roadways and entries of a mine and their
adaptability to the use intended are not matters of com-
mon knowledge, and we perceive no error in admitting

the character of evidence here objected to.  *Donk Bros. Coal and Coke Co.* v. *Stroff,* 200 Ill. 483.

The conduct of counsel for the appellee in offering to prove certain matters after objections to interrogatories relative thereto had been sustained is also complained of.  The offer to prove the matters referred to, after the objection had been sustained, was proper, and if the offer was of such a character as might be calculated to mislead or prejudice the jury, it would have been proper to have had the jury withdrawn until the offer was made. This, as also the conduct of counsel, was within the control of the trial judge, and such matters must very largely be left to his discretion, and while, as held in the case cited by appellant, (*North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486,) in clear cases this court will reverse a case because of the improper conduct of counsel in the presence of the jury, we there also said (p. 503): "This is always done with hesitation and reluctance, the court indulging, as it has a right to, in the presumption that the trial judge has performed his duty in restraining improper conduct on the part of counsel and in preventing remarks to the jury not justified by the occasion."

Other objections are made as to questions asked with reference to the conduct and character of the mule driven by the appellee, not confined to the particular time of the accident, and as to dirt on the roadway, when, it is claimed, there was no averment in the declaration that the roadway was dirty.  We perceive no error in this respect and regard the objection without merit.

After a careful review of this case we are satisfied that there is such evidence in the record as justified the court in submitting the case to the jury and that the evidence is sufficient to support the verdict.  We find that no material error intervened in the trial of the cause, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*