Arthur G. Appel, minor, by Philip G. Appel, his next friend, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 16,971.

1. STREET RAILROADS—*evidence as to street crossing accident.* A boy struck by a cable train testified that on crossing over a street at a cross walk, passing wagons obstructed his view, and that a train approached from behind a wagon, going fast and without any bell or gong being rung, and struck him. Defendant's evidence was that the accident happened some distance from the street crossing and that the boy got off a train, ran around the rear and suddenly into the course of another train not reasonably to be anticipated and with such suddenness as to render the occurrence unavoidable. The evidence on both sides was corroborated. *Held,* on considering either the entire evidence, or the evidence for the plaintiff alone, a verdict for the plaintiff was not against the weight of the credible evidence.

2. APPEALS AND ERRORS—*when improper argument of counsel will not reverse.* Improper argument of counsel in a personal injury case in referring to evidence that has been ruled out, and to his efforts to find witnesses, a matter outside the record, and in appealing to the sympathy of the jury, will not reverse where the address of counsel for the defendant tended to provoke a reply, the trial judge promptly rebuked the attorney in the presence of the jury, instructing them to disregard the remarks, three trials have been had and it is not urged that a verdict for $10,000 is excessive.

Appeal from the Circuit Court of Cook county; the Hon. KICK-HAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912. Rehearing denied and opinion modified October 17, 1912, and refiled.

FRANKLIN B. HUSSEY and C. LEROY BROWN, for appellant; LEONARD A. BUSBY, of counsel.

LEO KORETZ and JOHNSON & BELASCO, for appellee; JOEL BAKER, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This is an appeal from a judgment of $10,000 recovered by appellee, hereinafter called plaintiff, in an action for damages for personal injuries. The judgment appealed from was rendered after a third trial before a jury. The first trial resulted in a disagreement and the second trial in a verdict for $6,500 in favor of plaintiff, which verdict was set aside and a new trial granted. The same judge who presided over the second trial officiated at the third trial. After verdict rendered in the third trial a motion for a new trial was overruled and this judgment entered.

The record is very voluminous and the printed arguments of counsel are lengthy and exhaustive. The declaration originally consisted of two counts, but on the first trial the second count was dismissed. The case was tried on the second and third trials solely on the first count, which alleged, substantially, that on August 5, 1904, plaintiff was attempting to cross State street in an easterly direction, at and near 25th street; that while so attempting to cross said street and while at all times in the exercise of due care and caution for his own safety "the said defendant so carelessly, wrongfully and negligently drove, managed and operated a certain cable train in a southerly direction, *and* without any warning or notice to the said plaintiff, toward, across and beyond the said 25th street, as to cause the same, by and through the negligence of the said defendant, as aforesaid, to strike the said plaintiff with great force and violence, then and there and thereby crushing his leg and otherwise greatly and permanently injuring him." The facts are, substantially, that on August 5, 1904, plaintiff, then a boy of eleven years, was struck by a south-bound cable train of appellant, hereinafter called the Company, on State street, either at 25th street or between 25th and 26th streets in the city of Chicago. He sustained in-

juries about the head and face and his right leg was crushed so as to necessitate amputation six inches above the knee.

The testimony of the many witnesses on both sides is very conflicting. The plaintiff's version of the accident is that about 5:30 o'clock in the afternoon, plaintiff, accompanied by two boys of about his own age, attempted to cross east over State street at the south *cross-walk* of 25th street, while on his way for a swim in Lake Michigan; that while the three boys were so crossing the street two coal wagons were being driven one after another in a westerly direction across State street and across the tracks of the Company; that the rear end of the second wagon had just cleared the west track, which had obstructed the boys' view of the tracks to the north of them; that just as they were crossing the tracks, plaintiff being slightly in the rear, a cable train approached from the north and from behind said second coal wagon, "going fast" and without any bell or gong being rung or other warning being given, and plaintiff was struck by the southeast part of the front or "grip" car of said cable train and suffered the injuries complained of. The Company's version of the accident is that plaintiff was not struck at 25th street but at least 200 feet further south in State street; that when struck he was not crossing the street from west to east but was running from east to west; that just before the contact a north-bound cable train passed a south-bound train near the middle of the block between 25th and 26th streets; that just as it passed plaintiff ran southwest around the rear end of the north-bound train and against the southeast corner of the grip-car of the south-bound train, and that plaintiff had a bundle of newspapers under his arm at the time and had been riding on the north-bound train. Counsel for the Company maintain that this is a case of a boy running suddenly into the course of a train not reasonably to be anticipated

and with such suddenness as to render the occurrence wholly unavoidable.

Counsel for the Company urge a reversal of the judgment on the following grounds: (1) The verdict is manifestly against the weight of the "credible evidence" in the case. (2) Even if the evidence introduced on behalf of the Company be entirely disregarded and plaintiff's evidence be accepted as true it does not establish a case of liability. (3) Instructions numbered 18 and 21 offered by plaintiff and given to the jury were erroneous. (4) Plaintiff's counsel was guilty of such misconduct in his argument to the jury as warrants a reversal of the case. Counsel do not contend that the verdict is excessive.

After a careful examination into the facts of this case, we cannot say that the verdict is manifestly against the weight of the credible evidence in the case. Neither can we say, disregarding the evidence introduced on behalf of the Company entirely and accepting plaintiff's evidence as true, that plaintiff's evidence does not establish a case of liability as contended by counsel.

And we do not think, in view of the declaration and facts of the case, that the trial court committed error in giving to the jury the instructions complained of.

As to the point made that the plaintiff's counsel in his argument to the jury was guilty of such misconduct as warrants a reversal of the case, one of the disputed questions in the case was whether or not plaintiff at the time of the accident had a bundle of newspapers with him. Plaintiff and some of his witnesses claimed that he had not, and some of the witnesses for the Company claimed that he had and that after the accident the same were scattered about the streets near him. If plaintiff carried newspapers the inference would be strong that at the time of the accident he was not going to the lake for a swim as he testified. In rebuttal, plaintiff's counsel called the father of plaint-

iff as a witness and endeavored to show by him a list of customers to whom the Appel newspaper agency delivered papers at the time of the accident, and the route usually taken by plaintiff in so delivering the papers. Upon objection made by counsel for the Company the court held that "evidence as to the route is not rebuttal in this case," and the list was not admitted in evidence.

Counsel for the Company in his address to the jury, in referring to some of plaintiff's witnesses, said:

"All these fellows are acquainted. Where do they come from? Joe LaMansky, Fritzie Schmidt, Fishman, Campbell. Every one you can trace right through. Who are the parties? Do they converge? Are they in different lines of business, distant from one another? No. Interested or acquainted with one another? Yes."

In closing his address to the jury counsel said:

"If this is a framed-up defense, * * * if this is framed-up and concocted in my office or the City Railway office, why didn't the other six see the papers? * * * Eight witnesses who saw them and saw him flipping those cars, running toward the car and saw the papers, every one of the eight. * * * It isn't a question of sympathy, it is a question of even handed justice at your hands. * * * I am sorry for that boy's losing his leg, I am sorry to see him tell such a story as this here, I am sorry to see boys come in here and try to bolster up a thing when they give no reason of abandoning their usual evening occupation of having newspapers with them * * * and going off swimming at dinner time or supper time, but I am sorry for the boy losing his leg, but that has got nothing to do with the evidence in this case as to how the accident happened."

Immediately following the making of the above remarks by counsel for the Company, plaintiff's counsel made his closing argument to the jury in which he said, among other things:

"The City Railroad Company has cut a boy's leg off, and the boy is a young boy, and he wants Fifteen

or Twenty Thousand Dollars for it, he claims they are negligent, he files a lawsuit against them and asks them for money; think of it, you know the street car company are so in the habit of getting nickels right along, that it is a hard proposition for them to give some back some time, and this boy is asking for it, and they find out that this boy had a newspaper route and that he had been in the habit, every evening, off and on, of delivering papers down on Wentworth Avenue, and on La Salle Avenue, and through there, and we had the list of the customers right here, and Hussey (counsel for the Company) was so fair he wouldn't let you men see it.

Mr. Hussey: I object to that statement.

The Court: Mr. Belasco, the court ruled on that and the court ruled the evidence was incompetent, so you can't make that sort of argument without reflecting on the court. * * * The jury will disregard the remark.''

Further on in his argument plaintiff's counsel said: ''Gentlemen, if this accident didn't happen at 25th Street, then myself and Mr. Baker and the twelve witnesses that testified to this case ought to be on the North Side; I oughtn't to practice law any more, I haven't any right, because if this case was framed up, I framed it; I talked to these witnesses, I found some of them; Mr. Baker found some of them; we went around there and we canvassed the neighborhood up and down and around—

Mr. Hussey: I object to that.

The Court: No, don't go into that as to what you did outside of the record. * * * The jury will disregard that.

Mr. Belasco: * * * Don't you give me credit if I got these twelve witnesses and brought them in my office and trained them, that I couldn't do a better job than I have, one witness saying one thing and one saying another; they would have all told the same story just as our friend Hussey's did. * * * There is your fine bunch of witnesses, witnesses that you are asking this jury to turn this boy loose penniless. Men, the boy has had three trials, he has grown from a boy

to a lad; this woman that saw this accident was a girl, and she is now a mother, and they still keep this boy out of justice. As I say in this case, men, don't let them do it any more; pay the boy for God's sake, don't turn him loose any more; two trials he has had, this is the third—

Mr. Hussey: I object to that line of argument. 'Pay the boy for God's sake.' * * * It appeals to the sympathy of the jury.

The Court: Mr. Belasco, you must not make that sort of argument to the jury, and you must direct your argument to a logical examination of the facts in the case, and the jury must not be influenced by any appeals of that kind; they must stick right to the evidence and to the law and to arguments of either counsel as are logical and based upon the evidence."

Counsel for the Company excepted to these remarks. We think that certain of these remarks were highly improper and such as in some cases would be grounds for a reversal. But inasmuch as it may be considered that portions of the address of counsel for the Company tended to provoke a reply by plaintiff's counsel, and inasmuch as the trial judge promptly rebuked plaintiff's counsel for the improper remarks in the presence and hearing of the jury, and instructed them to disregard the same, and inasmuch as three trials of the case have been had and counsel for the Company do not urge that the verdict in the last trial is excessive, we are of the opinion, in view of all the facts and circumstances of the case, that the judgment should not be reversed because of such misconduct. In North Chicago Street Ry. Co. v. Cotton, 140 Ill. 486, 502, it is said:

"It should be remarked that, from the very nature of the case, questions involving the conduct of counsel at the trial, and the character and scope of their arguments to the jury, must be left largely to the sound discretion of the trial judge. * * * In clear cases this court will reverse, and frequently has reversed, judgments in consequence of improper remarks to the jury.

But this is always done with hesitation and reluctance." (Cited in Henrietta Coal Co. v. Campbell, 211 Ill. 216, 228, and in Chicago City Ry. Co. v. Strong, 230 Ill. 58, 60; see also, Chicago City Ry. Co. v. Foster, 128 Ill. App. 571, 578, aff'd 226 Ill. 288, 295.)

The judgment of the Circuit Court is affirmed.

*Affirmed.*