John T. Morris, Appellee, v. O'Gara Coal Company, Appellant.

## Gen. No. 18,359.

1. MINES—*assumed risk.* Where plaintiff, while working with a new machine used for cutting coal in a mine, uses a pinch bar as a substitute for a jack to help hold the machine in place and the bar drops out of his hand, knocking him into the machine, the facts are not of such a character as warrant the conclusion that, as a matter of law, there was an assumption of risk by the plaintiff, and the question is properly submitted to the jury.

2. MINES—*contributory negligence.* Where plaintiff is injured while working with a new machine used for cutting coal in a mine, there being a conflict in the testimony as to the position of plaintiff and what he was doing at the time of the accident, the question whether he was guilty of contributory negligence is properly submitted to the jury.

3. EVIDENCE—*when conversation admissible.* In a personal injury action, where it is alleged that plaintiff was inexperienced in the use of the machine which caused the injury, a conversation between an employe working with plaintiff and the machine boss, when the latter was explaining to them how to run the machine, is admissible.

4. APPEALS AND ERRORS—*saving questions.* Where plaintiff was injured while operating a new machine in a mine and evidence is admitted to sustain a count alleging that defendant failed to instruct plaintiff

regarding the use of the machine, but the jury are afterwards instructed at the request of defendant to disregard the count, defendant cannot complain of the evidence when he does not request the court to instruct the jury to disregard it.

5. EVIDENCE—*impeaching testimony.* Where plaintiff was injured while operating a new machine in a mine, the machine boss having testified on cross-examination that he did not remember saying that he did not know how plaintiff and another employe "would get along, as they were both green men," a witness is properly allowed to testify that such a conversation took place, for the purpose of impeaching the testimony of the machine boss.

6. EVIDENCE—*expert testimony as to mine machinery.* Where plaintiff was injured while operating a new machine in a mine, testimony of machine experts as to what constitutes a full equipment of such a machine is admissible.

Appeal from the Superior Court of Cook county; the HON. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed June 3, 1913.

F. J. CANTY, HARRY M. McCONNELL and GEORGE W. MILLER, for appellant.

H. ROBERT FOWLER, POMEROY & MARTIN and KRAMER, KRAMER & CAMPBELL, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This is a suit for damages on account of personal injuries sustained by the appellee (plaintiff) while in the employ of the appellant (defendant). There was a trial before the court and a jury. From a judgment based upon a verdict in favor of the plaintiff this appeal has been perfected.

It appears that on the day before the accident the defendant had installed several mining machines, and that it was while plaintiff was working with one of the machines that the accident happened. The purpose of the machine was to cut out a portion of the coal at the bottom of the bed of coal sought to be removed.

The machine in question was operated by electricity.

As described in the briefs, it consists of a motor body at the back and a frame around which revolves a chain with bits attached. The chain revolves from right to left, and as the coal is cut the motor body travels forward, pushing the frame and the bits further under the coal until a cut of 5½ feet deep and three feet wide is made. Then it works back from under the coal, and when the bits come out the machine is moved over on the skids and another cut is made, and so on until the miners are ready to blast. In order to make the machine stable, so that a cut can be made, it is necessary to have two supports or braces, which are called "jacks," one at the front end of the machine and the other at the back end of the machine. The hind jack is attached firmly to the back part. From there it reaches upward and backward, where it is braced against the roof of the room. The front jack is fastened at the left corner of the front end of the machine and is braced against the coal at an angle to the right. The face of the coal not being absolutely smooth or even, it is necessary that the front brace to the machine be of different lengths, which is accomplished by fitting what are called "jack pipes" over the end of the front jack.

A jack pipe is described as a hollow iron pipe large enough to slip over the end of the front jack, and the front end of the jack pipe is flattened so as to make it hold more firmly against the coal. On this front jack for a distance of eight to twelve inches threads are cut. There is a wheel upon it. The jack pipe is slipped over the end of the front jack, and the bottom of the pipe rests against this wheel. By turning the wheel to the right it is made to move upwards along these threads, and by this means the front brace can be lengthened and pressed firmly against the coal. This distance of eight to twelve inches of play is not sufficient for the operation of the machine, on account of the unevenness of the face of the coal, and it is thus

necessary for the front brace to be of different lengths at different times.

The portion of the machine that does the cutting is called the "chain" or "saw," and the box-like portion at the back end of the machine is called the "motor body." The portion of the machine to which the front jack and the back jack are attached is called the "rackrails" or "frame." The portion within the rackrails and between the motor body and the front end of the rackrails is called the "pan." In making a cut the frame or rackrails remain stationary, but the chain, the pan and the motor body move forward along the rackrails, the chain passing under the coal as the cut is made. After the cut is completed the machine is reversed, the motor body backs up to the back end of the frame, and the chain and pan back out from under the coal, but this does not reverse the motion of the chain. It continues to pass from right to left. Connecting the front end of the frame, or connecting the two front ends of the rackrails, is a cast iron called an "angle iron." It is possible to take a rod and place one end against the coal and the other end against this angle iron.

The machine on the day in question was operated by two men. One of the men was known as the machine runner, whose duty it was to brace the hind jack and remain on the back end of the machine and apply the power. His name was Enoch Bennett. The other man, the plaintiff, was known as the machine helper, his duty being to brace the front jack and to stand at the left side of the machine near the face of the coal, and shovel back the fine particles of coal that were made by the machine in cutting its way under the coal. These two men commenced work on the machine on the day before the accident. The machine was equipped with but one jack pipe, about 18 inches long, for the front end. The first work was done in what was known as room No. 6, and one James Pry, an assistant

machine boss, showed them how to get the mining machine into the room and instructed them. Six cuts were made with the machine in the room that afternoon, and Pry remained with them until quitting time. Pry informed Richard Bennett, the machine boss, after leaving the men that the machine had only one jack pipe, and Richard Bennett replied that he could not get another until he obtained material out of which to make it.

There is evidence tending to show that on the following morning Richard Bennett went to the mine with the plaintiff and Enoch Bennett, at the request of Enoch Bennett, who asked that he show them how to handle the machine; that when Richard Bennett's attention was called to the fact that the front pipe and jack pipe were too short to reach the face of the coal, he instructed the plaintiff to use a pinch bar in place of the front jack and pipe, and showed him how to use it as a substitute. Thereupon it would appear that Richard Bennett left the two men to operate the machine; that plaintiff later found that the front jack and jack pipe were too short to reach the face of the coal, and used the pinch bar in the manner in which he had been shown to use it. The machine made the cut without difficulty, the power was reversed, and in some way the pinch bar fell from its position, was caught in the bits of the chain, struck the plaintiff and threw him against the chain.

At this point the testimony of the plaintiff and the only other witness to the accident, Enoch Bennett, is conflicting. The plaintiff states that the bar fell from its position before he had an opportunity to get into the pan; that he was standing on the left hand side of the machine, waiting for the motor body to back out so that he could take the bar down. Enoch Bennett, who was a witness for the defendant, testified that just before the accident happened Morris was in the pan of the machine; that he had hold of the pinch

bar that he was using for a jack; that he did not know whether it was with one hand or two; that the pinch bar dropped out of his hand and hit him, knocking him onto the right hand side of the machine; that the chain caught his leg and pulled him from the right hand to the left hand side of the machine. After the accident he was found on the left hand side of the machine. His left leg was so badly mangled that it was necessary to amputate it between the knee and the hip. He had two ribs broken, and sustained other cuts and bruises.

The case went to the jury upon six counts of the declaration, which alleged in various ways the plaintiff's inexperience and lack of knowledge of the danger; charged the defendant with failure to supply the machine with a front jack of sufficient length; charged a negligent order by the defendant to use the pinch bar as a substitute for the jack, and alleged that plaintiff did not know that the pinch bar was a dangerous substitute, while the defendant did or should have known, if in the exercise of reasonable care and diligence.

The contentions of the defendant are, first, that there was an assumption of risk on the part of the plaintiff, and that a verdict should have been directed in the defendant's favor on this ground; second, that plaintiff was guilty of contributory negligence; third, that there were errors in rulings on evidence; and, fourth, that there were errors in the refusal to give certain instructions tendered by the defendant.

We think the question was properly submitted to the jury as to whether or not the risk taken by the plaintiff was one assumed by him. It is one of those cases in which "all the circumstances must be taken into account, and not merely the isolated fact of risk." *Hartrich v. Hawes*, 202 Ill. 334; *Swift & Co. v. O'Neill*, 187 Ill. 337. Plaintiff had worked in a mine for many years prior to the accident. The machine upon which the accident occurred was a new one, and one with

which the plaintiff had had practically no experience; there was an attempt by the foreman to instruct him; the machine lacked a front jack pipe long enough to brace the front end of it. In our opinion the facts are not of such a character as would warrant the conclusion that, as a matter of law, there was an assumption of risk by the plaintiff, nor are we prepared to say, after taking all of the circumstances into consideration, that the evidence in the record is of such a character as that the determination of the jury, as reflected in its verdict, was in this regard against the manifest weight of the evidence.

It was for the jury to determine whether the plaintiff was or was not in the pan holding the pinch bar; whether, if he was not in the pan, he should have been; whether or not plaintiff had hold of the pinch bar and allowed it to drop from his hands on the chain or saw, and, by their determination of these and other questions in the case, come to a conclusion as to whether or not the plaintiff was guilty of contributory negligence. We are unable to say that the plaintiff, as a matter of law, was guilty of contributory negligence, and we are not persuaded that the jury came to a wrong conclusion with respect to this phase of the case.

A conversation between Richard Bennett and Enoch Bennett in the presence of the plaintiff, was allowed to be recited. This had to do with the alleged request of Enoch Bennett to Richard Bennett that he show the former and the plaintiff how to handle the machine. We think this was competent in view of the allegations of the declaration as to the inexperience of the plaintiff, etc.

It is also complained that the plaintiff was allowed to testify as to the condition of the room in respect to the light at the time of the accident, and to the alleged fact that the mine manager did not give him any instructions with reference to his work as a machine

helper. We find no error here such as should reverse the judgment.

Attention is called by the defendant to the provision of the statute, section 20, chapter 93, under which, in mines in which the works are so extensive that all the duties devolving upon the mine manager cannot be discharged by one man, other persons may be designated as assistants to the mine manager, who shall exercise these functions under the mine manager's instructions. In the same division of this section it is provided that the mine manager shall have power to instruct employes as to their respective duties, and to require of all employes obedience to the mining law.

It is argued that because Frank Taggart and Richard Bennett, who were assistants to the manager, instructed the plaintiff, evidence that he was not instructed by the manager was harmful. At the time the testimony was admitted the seventh count of the declaration was still in the case. By instruction No. 1, given at the request of the defendant, the jury was directed to disregard the seventh count of the declaration, in which it was charged that the mine manager wilfully failed to instruct the plaintiff as to his duties, etc., and by instruction No. 23, given on behalf of the defendant, the jury were advised that the defendant was not required by law to instruct or give notice to the plaintiff as to risks or dangers which were obvious to him, or which might have been discovered by him by the exercise of ordinary care, observation and attention; that plaintiff must be held to have assumed and taken upon himself all such risks or dangers, etc. Other long instructions on the question of assumption of risk were also given. We think that under the circumstances the case should not be reversed for the ruling on the evidence last referred to. The defendant did not request the court to instruct the jury to disregard it.

On cross-examination Richard Bennett, heretofore

referred to as a witness for the defendant, stated that he did not remember having had a conversation with one John Smith regarding Morris and Enoch Bennett, in which he told Smith that he did not know how Morris and Bennett "would get along as they were both green men." On rebuttal Smith was allowed to testify that such a conversation took place. The court, upon ruling upon the objection, stated in effect that the defendant was not bound "by any fear that Richard Bennett might have," but that the question would be allowed to be answered merely for the purpose of impeaching the testimony of Richard Bennett. The testimony was properly received.

Certain questions propounded to machine experts, who testified as to what constituted a full equipment of a machine such as that upon which the accident occurred, were allowed to be answered. We think, under the authority of *Donk Bros. Coal & Coke Co. v. Stroff,* 200 Ill. 483; *Henrietta Coal Co. v. Campbell,* 211 Ill. 216, and *Kellyville Coal Co. v. Strine,* 217 Ill. 516, that no error was committed in receiving the testimony.

Complaint is made of the refusal of the court to give two instructions proffered by the defendant. We feel it unnecessary to discuss this alleged error. The court gave more than thirty instructions tendered by the defendant, many of them of great length, and we think the jury were fully and thoroughly advised as to the law that should control them in their consideration of the case.

The judgment will be affirmed.

*Affirmed.*