DONK BROS. COAL AND COKE COMPANY

*v.*

JOSEPHINE STROFF.

</div>

*Opinion filed December 16, 1902—Rehearing denied February 6, 1903.*

1. MINES—*expert miner may give opinion as to number of props necessary to support roof.* An expert miner may be allowed to express an opinion as to the number of props that should be used in a certain place to prevent slate from falling.

2. SAME—*it is proper to inform jury of legal meaning of word "willful."* In an action under the act relating to mines and mining it is proper to advise the jury, by instruction, as to the legal meaning of the word "willful," as used in such act with reference to a mine owner's willful disregard of its provisions.

3. INSTRUCTIONS—*when giving of objectionable instruction will not reverse.* The giving of an instruction that mere contributory negligence on the part of deceased "will not defeat his widow's right of recovery where he is killed by the willful disregard of the Mining act, as alleged in the declaration, by an act of omission on the part of the mine manager," is not ground for reversal, where other instructions repeatedly advise the jury that such "willful disregard" must be proved. (CARTWRIGHT, J., dissenting.)

*Donk Bros. Coal Co.* v. *Stroff*, 100 Ill. App. 576, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM HARTZELL, Judge, presiding.

Wise & McNulty, for appellant.

Burton & Wheeler, (W. E. Hadley, of counsel,) for appellee.

Mr. Justice Boggs delivered the opinion of the court:

This suit was brought against appellant in the circuit court of Madison county to recover damages on account of the death of Frank Stroff, and was based upon section 33 of the Mining act. (Hurd's Stat. 1899, p. 1174.) It was begun in the name of W. E. Hadley, as administrator of the estate of said Frank Stroff, and the declaration averred that the deceased left Josephine Stroff, his widow, who was deprived of her means of support. On demurrer to that declaration the court permitted amendments making said Josephine Stroff, the appellee, plaintiff, and averring the birth of a posthumous child, Mary Stroff. Appellant pleaded the general issue, and upon a trial there was a verdict of guilty and assessing damages at $3000, upon which verdict judgment was entered. The Appellate Court for the Fourth District affirmed the judgment.

The declaration charged a willful failure of the defendant to provide a sufficient supply of props, caps and timbers delivered on the car of said Frank Stroff at the usual place when demanded, as nearly as possible in suitable lengths and dimensions for the securing of the roof by him, and the falling of the roof in consequence of such failure, resulting in his death. The evidence at the trial concerning the facts so alleged, and which were essential to a recovery, was in irreconcilable conflict. There was no dispute about the following facts: Frank Stroff was employed by defendant in its coal mine, and worked with Mike Panz, his partner, or "buddy," as he was called. They had been driving an entry where there was a dangerous layer of slate under the rock roof, and this work was done by contract. The slate became loose, and on the morning before the accident they called the manager

in and showed him some slate that had fallen. He directed them to clean up the slate and "timber out,"—a job at which they would work by the day. They went to work and cleaned up the slate. The entry was wet and a sump was dug to gather the water, and the water was bailed out of it. During that night two props and a cross-bar were set by other employees of defendant under the piece of slate which fell the following morning, causing the death of Stroff. These props were set between the rails of the track. Stroff went to work in the morning, and about twenty minutes after seven o'clock he was killed by the falling of the slate. When the slate fell the car was on the track under it, and the props gave way, either by being struck by the car or on account of their insufficiency. There were several props at the switch point in the cross-cut at the mouth of the entry, about twenty feet back from the face of the coal and about twelve feet from the slate that fell. The controverted questions were whether props were asked for by Stroff or Panz until just before the accident, when there had not been time to furnish them; whether they ought to have used the props which were lying in the cross-cut at the entry, and whether suitable props were furnished at the usual place. The evidence for the plaintiff was, that Stroff asked the mine manager for props at different times for more than a week before the accident. The evidence for the defendant upon that subject was, that there was no request for props until about fifteen minutes before the accident; that no car had returned from the shaft, and that there had not been sufficient time to get any props to the place. There was evidence tending to show that the props in the cross-cut were of suitable length and fit for use. It was not denied that props were needed to support the roof.

Under this state of the proof, discussion of the propriety of the action of the court in overruling the motion, entered by the appellant company at the close of all

the evidence, to direct a peremptory verdict for the appellant company is wholly unnecessary. The evidence demanded the submission of the case to the jury.

Mike Panz, a witness for the appellee, while testifying through an interpreter, was asked the following: "Ask him to state what it was that killed Frank Stroff, if he knows how, and let him describe it." The answer through the interpreter was: "He said the rock killed him—the slate; and the cause was, they had no timbers to brace it properly." It was objected that the answer was not responsive to the question, and counsel for the appellee said: "We will withdraw any part of the answer that is not responsive to the question." Counsel for the appellant company said: "We object to that part of the answer in which he says it fell because there was no timber or props there." The court overruled the objection, and this is assigned as for error, on the ground the witness was allowed to give his opinion as to the cause of the accident. The witness had previously testified to facts intended to qualify him to give an opinion, as an expert, as to the timbers necessary to make the roof secure at that point. It is not urged that the preliminary testimony was insufficient to qualify him to give such an opinion. He said there ought have been four props on each side, and a cross-bar, and that there were only two props and a cross-bar there. He was then asked the question which brought out the answer which was objected to. The whole of this testimony being taken together, it is clear the witness meant, and would be understood to mean, that the slate fell because there ought have been eight props where there were only two. We see no reason why an expert miner should not be allowed to express an opinion as to the number of props that would be required to prevent the slate in question from falling in. 12 Am. & Eng. Ency. of Law, (2d ed.) 442.

It is complained the court gave the following instruction at the request of the appellee:

"The court instructs the jury that mere contributory negligence on the part of Frank Stroff will not defeat his widow's right of recovery where he is killed by the willful disregard of the Mining act, as alleged in the declaration, by an act of omission on the part of the mine manager; and the word 'mine manager,' as used in these instructions, means the person who is charged with the general directions of the underground work, or both the underground and outside work, of the coal mine in question, and who is commonly known and designated as 'mine boss' or 'foreman' or 'pit boss.'"

Counsel for the appellant company insist that this instruction assumes it to be a fact that said Frank Stroff came to his death by reason of a willful disregard on the part of the appellant company of the provisions of the Mining act. The purpose of the instruction was to advise the jury that a lack of ordinary care for his own safety on the part of the deceased would not defeat a recovery by his widow, if his death occurred by reason of a willful omission to comply with the requirements of the Mining act, as charged in the declaration. The instruction is so drawn as to provoke the criticism preferred against it. We do not, by any means, approve it. If the instruction stood alone as the direction of the court to the jury the error might be deemed so serious as to call for a reversal of the judgment, but when all of the instructions are considered together we think it clear the jury could not have been misled to understand the court intended to express any opinion whatever as to any controverted question of fact. In another of the instructions given at the request of the appellant company the jury were told that the only question before them was whether the appellant company was guilty of willfulness in failing to provide suitable props, and in another instruction of the series the jury were told that the "plaintiff must prove that the defendant willfully,—that is, intentionally or knowingly,—failed to provide, after a demand was made

upon its mine manager, sufficient props and timbers to
enable those miners who were working in the entry in
question to timber that part of the roof which fell upon
the deceased and killed him." And in another of the in-
structions the jury were advised that even should they
believe, "from the evidence, that the deceased and his
partner demanded timbers, and the timbers demanded
were not furnished at the time of the demand, yet if you
also believe, from the evidence, that the defendant, be-
fore the accident to the deceased, had furnished timbers
of sufficient length and dimensions for the securing of
the roof and place where it fell upon deceased, and that
such timbers and props so furnished were in the entry or
cross-cut to it, and were where deceased and his part-
ner could readily get them, then this was a substantial
compliance with the law, and you cannot find that the
defendant willfully violated it." And in still another of
the instructions the jury were instructed that if they be-
lieved, "from the evidence, that timbers and props were
demanded of the mine manager in the morning before
deceased was injured, and you further believe, from the
evidence, that the manager said he would furnish them,
yet, if you further believe, from the evidence, that from
the time this demand was made until the accident to the
plaintiff no miners' cars came to the shaft or were re-
turned from it, and that sufficient time had not elapsed
to enable him to send timbers in the miners' cars to this
entry, then a failure to furnish them under these circum-
stances was not willful." And again the jury were in-
structed in behalf of the appellant company, "that under
the averments of the declaration in this case the plaintiff
must prove by the greater weight of the evidence that
the defendant did not, after a demand had been made
upon its mine manager, provide a sufficient supply of
props and timbers to enable the deceased, his partner,
and those working in the entry in question, to prop-
erly prop and secure the slate which fell upon him, and

even though you may believe, from the evidence, that the plaintiff has produced some evidence tending to prove these facts, unless you further believe, from the evidence, that she has proved these facts by the greater weight of evidence, you will find your verdict for the defendant." Having all these instructions before them, it would not be creditable to the intelligence of the jury to conclude they might have understood the instruction under consideration to contain an assumption as to the truth of the fact which in the other instructions the court repeatedly advised them they were to determine from the evidence, and which they must find to have been proven by the weight of the evidence, before they could find the appellant company guilty of a willful disregard of the provisions of the Mining act in question.

Another instruction complained of by counsel for the appellant company, being the second given at the request of the appellee, is as follows:

"The court further instructs the jury, that where an owner, operator or manager so operates his mine that he knowingly operates it without conforming to the provisions of the Mining act of this State, he willfully disregards its provisions and willfully disregards the safety of the miners employed therein, in the sense that the word 'willful' is used in the statute."

Counsel for the appellee intended by this instruction to procure the word "willful" to be defined to the jury. The complaint that the instruction is a mere abstract proposition of law is hardly just. It was not improper to advise the jury as to the legal meaning of the word "willful," as used in the statute. Even if but an abstract proposition of law, it would not work a reversal unless misleading. It is thought it might operate to lead the jury to find the appellant company guilty on account of some general disregard of the statute, but, as we have seen, in another instruction the jury were expressly charged that the only question before them was whether

the appellant company was guilty of willfulness in failing to provide suitable props and timbers, and were repeatedly told in other instructions that plaintiff could not recover unless it appeared from the proofs appellant had willfully failed to comply with that provision of the Miners act requiring it to supply to the deceased the props and timbers as charged in the declaration.

There is no error of such gravity as to require reversal of the judgment.          *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

We are all agreed that it was error to give the instruction assuming the existence of a controverted question of fact, and that the error would require a reversal unless it was cured by other instructions. I have been unable to see how other instructions stating that the controverted fact must have been proved to justify a verdict for plaintiff could cure an instruction substantially telling the jury that such fact had been proved.