## CARNEY COAL COMPANY v. BENEDICT.
### (No. 720.)

MASTER AND SERVANT—INJURIES IN COAL MINES—DUTY TO WARN—
ASSUMPTION OF RISK—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—
QUESTION FOR JURY—OBVIOUS DANGERS—EVIDENCE—OPINION EVI-
DENCE—ADMISSIBILITY.

1. A master is not required to give warning of visible and ob-
vious dangers to a servant possessing the intelligence, un-
derstanding, and experience sufficient to comprehend and
appreciate them, but if the servant is employed to do work
of a dangerous character or in a dangerous place, and he
is not experienced, but, because of his inexperience, may
fail to appreciate the danger, it is the duty of the master
before exposing the servant to such danger to give him
such instructions or cautions as will enable him to compre-
hend them, and do his work safely with proper care on his
part.

2. In personal injury actions, whether the defendant has been
negligent as alleged or whether plaintiff has been guilty of
contributory negligence are questions of fact to be sub-
mitted to the jury, unless the testimony is without conflict
and of such character as to afford no opportunity for fair-
minded men to differ upon the conclusion to be reached
thereon.

3. As a general rule, whether or not a servant assumed the risk
is a question of fact for the jury, and the court is not
authorized to say, as a matter of law, that the danger was
obvious, unless it is shown by the evidence without con-
flict that an ordinarily prudent man or one with the ex-
perience of the injured servant ought to have noticed it.

4. Plaintiff, a young man alleged to be without experience, was
employed by the defendant as a coal miner. After he and
the one working with him had fired a shot to loosen the

coal, they discovered a crack on one side of a large projecting lump of coal which they tried to pry down with a bar, and, being unable to get it down in that manner, plaintiff concluded that there was no immediate danger of its falling and proceeded with the work of loading the coal which had fallen after the firing of the shot, and while so working the lump of coal aforesaid fell and injured the plaintiff. *Held* that, in view of the testimony of several experienced miners that it would require experience to understand and appreciate the danger of the lump of coal falling under the conditions aforesaid, and the testimony of plaintiff that he believed it to be safe to return to work, and the conflict in the evidence as to plaintiff's experience, the question whether the danger was obvious was one for the jury, and it would not be proper for the court to determine, as a matter of law, that the danger was obvious, or, because it was obvious, that the failure of the company to properly warn and instruct the plaintiff as to the use of the "sounding test" to avoid the danger of falling coal was not a proximate cause of the injury.

5. In such action, the defendant was not in a position to complain on error of the admission of the testimony of experienced miners to the effect that it requires experience to detect the danger of falling coal in a mine and that it would require experience to have detected and avoided the danger of the falling of the coal which injured the plaintiff, for, if the admission of such testimony was error, it was first brought into the case by defendant's cross-examination of a witness for plaintiff, and referred to on redirect examination, without objection, by asking the witness to explain what he had said on cross-examination, making it proper for plaintiff to pursue the same line of inquiry in examining witnesses competent to speak on the subject.

6. Such testimony was competent and properly admitted, notwithstanding the rule that, where all the circumstances can be fully and adequately described to the jury, and they are such that their effect can be estimated by all men, without special knowledge or training, the opinions of witnesses, expert or other, are not admissible, for the effect of the situation confronting the plaintiff immediately prior to his injury could not be estimated or understood by all men, as all men are not familiar with the operation of coal mines or with the various conditions that might or might

not indicate danger, and not as capable as experienced miners of determining whether a situation described to them would or would not obviously indicate a danger.

[Decided May 16, 1914].                    (140 Pac. 1013).
[Rehearing denied November 24, 1914].      (144 Pac. 19).

Error to the District Court, Sheridan County; Hon. Carroll H. Parmelee, Judge. On Rehearing. For former opinion, see 21 Wyo. 163, 129 Pac. 1024.

The facts will be found stated in the former opinion reported in 21 Wyo. 163, and in that report of the case will be found an abstract of the briefs on the original hearing.

*Enterline & LaFleiche,* for plaintiff in error, on petition for rehearing.

A servant who understands and appreciates the fact that there is danger is put upon inquiry, and he proceeds thereafter at his peril and assumes the risk. Appreciating some danger he cannot ignore the fact and proceed with his work without assuming the risk. (Dillon v. Nat. Coal Tar Co., 73 N. E. 978; Fort v. Sulphite Co., 172 Mass. 544, 52 N. E. 1065, 48 L. R. A. 96; Carey v. R. R. Co., 158 Mass. 228, 33 N. E. 512). Benedict certainly knew that coal mining was a dangerous business, and, as a matter of law, he was bound to know that the blast had increased the danger. Where a certain condition in a mine is conceded to have existed, or the testimony concerning it is undisputed, it is for the court to say, as matter of law, whether or not that condition constitutes a danger so obvious as to put the servant upon his inquiry and compel him to assume the risk if he proceeds. (Montgomery v. Robertson, 82 N. E. 396; Hynes v. Lumber Co., 132 N. W. 889; Downey v. Sawyer, (Mass.) 32 N. E. 654). The mere fact that plaintiff testified that he did not understand or appreciate the degree of danger does not change the rule, nor entitle him to go to the jury upon that question.

*Burgess & Kutcher,* in support of the petition for rehearing that was granted.

A motion for non-suit or to direct a verdict will not be granted unless the testimony is undisputed or fair-minded men could draw but one possible conclusion from the evidence.    In determining the motion the evidence against which it is directed will be taken as true, with every reasonable inference therefrom.    (6 Ency. Pl. & Pr. 942, 945, 38 Cyc. 1567, 1586).    In view of the situation immediately prior to the injury the danger was not obvious to an ordinarily prudent person of inexperience.    To be obvious in the legal sense the danger must be so plain that an ordinary man even of inexperience will understand and appreciate it and know the means to guard against it.    The plaintiff applied all the knowledge which he had to determine whether the coal was solid or detached.    He did not apply the sounding test, a test recognized and used by all experienced miners, because he did not know of such a test.    The crack in the vein did not necessarily signify danger.    If the plaintiff had been properly warned and instructed the injury would not have occurred.    A recovery has been sustained in several cases under conditions similar to those in the case at bar.    (Sidwell v. Coal Co., (Ia.) 130 N. W. 729; Hosking v. Min. Co., (Mich.) 128 N. W. 777; Hanley v. California B. & C. Co., (Cal.) 59 Pac. 577; Larsen v. Magne-Silica Co., (Cal.) 111 Pac. 119; Daly v. Keil, (La.) 30 So. 254; Alton Pav. Co. v. Hudson, 52 N. E. 256).

Potter, Justice.

This case has been heard in this court a second time, a rehearing having been granted because of doubt as to the correctness of the previous decision to the effect that the failure of the defendant company to properly warn and instruct the plaintiff was not shown to be the proximate cause of his injury, and that the District Court, for that reason, erred in not giving, as requested, a peremptory instruction to find for the defendant.    Because of that error, as it then

appeared to the court, the judgment in favor of the plaintiff was reversed and the cause remanded for further proceedings. (See Carney Coal Company v. Benedict, 129 Pac. 1024, (21 Wyo. 163). The conclusion that the failure of the company to warn the plaintiff was not shown to be the proximate cause of his injury was based upon our view at that time of the evidence that the danger was obvious. A re-examination of the question has led to a different conclusion. The court is now of the opinion that the question whether the danger was obvious and was appreciated or should have been appreciated by the plaintiff was, upon the evidence, a question of fact for the jury, and was properly submitted to the jury by the trial court.

There was evidence tending to show that the one who hired and discharged the miners and directed them in their work was informed by both the plaintiff and his father that the plaintiff was without experience in mining coal, and that they were promised that the plaintiff would be put to work with an experienced miner. There was also evidence tending to show that the plaintiff was inexperienced, although there was a conflict in the evidence in this respect; the conflict arising from the fact that the plaintiff had worked in a coal mine in certain capacities, and it was claimed that because of his former work in a coal mine he was not to be regarded as an inexperienced coal miner. The evidence upon that question, however, was properly submitted to the jury, and by their verdict they must have found that the plaintiff was inexperienced; and they must also have found that the company knew of such inexperience and had failed to give him the necessary warning and caution, as alleged in his petition.

The failure of the company to instruct the plaintiff in what is known as the sounding test, to be used in discovering the danger of falling coal, was particularly relied on as the proximate cause of the injury. The jury were justified in finding that the plaintiff knew nothing of the sounding test and that he used such limited knowledge as he had

to determine whether the projecting lump of coal was suffi-
ciently solid to render it safe to continue at work at the
place where it subsequently fell. The evidence tended to
show that an experienced miner would have used and ordi-
narily would have detected the danger by the use of what
is known as the sounding test. Several experienced miners
called as witnesses described that test and the circumstances
and occasions for its use, among others a witness from
whose testimony we quote for the purpose of showing the
general character of the evidence on this point produced by
the plaintiff below: "Q. I will ask you what tests are em-
ployed by an experienced miner, by yourself as an experi-
enced miner and others of experience, in detecting and dis-
covering dangers of falling coal? A. The first test is by
means of sound. Q. Explain to the jury what that test is
and how it is made. A. It is a common thing with practi-
cal miners in going in their rooms or working place to have
a pick with them and test the roof and face of the coal
and some times the 'rubs' or sides, to see if it sounds firm
and solid, or loose and liable to come in. Q. Now, as to
that test, what if any experience is required to apply it?
A. A man that was not used to that kind of work would not
know. Q. You may explain what if any experience is re-
quired on the part of the miner to apply this test of sound
you speak of? A. It requires that a man would work in
the mine with a practical miner in order to get this experi-
ence. Q. How is that experience acquired? What man-
ner? A. Well, in the first place, if a practical miner would
take a green man, knowing he was not used to this work,
he would naturally show him the difference in sound of the
different places that were safe and unsafe in the mine.
Q. I will ask you whether or not that is the best test known
to miners to discover the danger of the liability of coal to
fall? A. It is. Q. What other tests, if any, are applied?
A. There is another test where you are testing rock in a
mine, and that is putting your hand on the rock while
sounding it. Other tests are by using a bar or wedges. If

you cannot pry them loose or wedge them loose a practical miner would consider them safe. Q. In your experience I will ask you whether or not in the case where there is a projecting body of coal in the corner of the room projecting some distance and about which there is a slight crack, or a crack, and you use a tamping bar, a miner uses a tamping bar and tries to pry it down and it fails to come down, I will ask you whether or not that would indicate safety, if a miner would know the danger of that coal falling? A. It does not necessarily indicate that there is danger to the man, or that there is not danger. Q. Explain that, Mr. Conoval. A. Some times, as I understand, the projecting piece of coal that hangs out in a working place there may be a check behind it, there may be just a wedge of coal holding it, or it may be setting firm on the bottom and the check going clear to the bottom and different things. It would be owing to the condition it hung, the condition of the check to say whether it would be dangerous to the man operating under it. If the check didn't go to the bottom; if there was just a small piece of coal, that a practical miner would find there, that held it, it would naturally show there was danger, and a practical miner would cut that and let it down. Q. Now I will ask you whether or not where real danger exists from a projecting lump of coal, whether that danger is generally detected or discovered by the sounding method you speak of? A. Yes, as a rule. Q. I will ask you whether or not it requires experience to apply that test? A. I would say it did. Q. Now I want to inquire of you in regard to appearances in a room where a miner is at work, whether the danger is usually apparent to the eye? A. To a practical miner as a rule it is. Q. But one without any experience? A. It would not be. Q. What would you say as to whether or not it is necessary to have experience to discern dangers from appearances? A. It would be necessary to have experience." The evidence on the question was conflicting, and, as we are now convinced, was properly submitted to the jury.

While the rule is well settled that a master is not required to give warning of visible and obvious dangers to a servant possessing the intelligence, understanding, and experience sufficient to comprehend and appreciate them, it is equally well settled that if the servant is employed to do work of a dangerous character or in a dangerous place, and he is not experienced, but because of his inexperience may fail to appreciate the danger, it is the duty of the master before exposing the servant to such danger to give him such instructions or cautions as will enable him to comprehend them, and do his work safely with proper care on his part. (Covelli v. Cooper Underwear Co., 151 Wis. 130, 138 N. W. 40). In personal injury actions, whether the defendant has been negligent as alleged, or whether plaintiff has been guilty of contributory negligence, are, as has often been said, peculiarly questions of fact to be submitted to the jury "unless the testimony is without conflict and is of such character as to afford no opportunity for fair minded men to differ upon the conclusion to be reached thereon." (Sidwell v. Economy Coal Co., (Ia.) 130 N. W. 729). And, generally, whether or not a servant assumed the risk is a question of fact for the jury, and a court is not authorized to say as a matter of law that the danger was obvious unless it is shown by the evidence without conflict that an ordinarily prudent man or one with the experience of the injured servant ought to have noticed it. (Healy v. Perkins Mach. Co., 216 Mass. 75, 102 N. E. 944; Covelli v. Cooper Underwear Co., *supra;* U, P. Ry. Co. v. Jarvi, 53 Fed. 65, 3 C. C. A. 433; Gallagher v. Lehberger, 84 N. J. L. 712, 87 Atl. 450; Braddich v. Phillips Coal Co., (Ia.) 138 N. W. 406; Alton Paving Co. v. Hudson, 176 Ill. 270, 52 N. W. 256; Hosking v. Cleveland Iron Min. Co., 163 Mich. 538, 128 N. W. 777; Sidwell v. Economy Coal Co., *supra;* Bouthet v. International Paper Co., 75 N. H. 581, 78 Atl. 650; Tenn. Copper. Co. v. Gaddy, 207 Fed. 297, 125 C. C. A. 41; W. U. Tel. Co. v. Burgess, 108 Fed. 26, 47 C. C. A. 168; Anderson v. Daly Min. Co., 15 Utah

22, 49 Pac. 126; N. Y. Biscuit Co. v. Rouss, 74 Fed. 608, 20 C. C. A. 555; Hanley v. California Br. & Constr. Co., 127 Cal. 232, 59 Pac. 577, 47 L. R. A. 597; Carnego v. Crescent Coal Co., (Ia.) 143 N. W. 550; Booth v. Stokes, 241 Pa. 349, 88 Atl. 490; Collins v. Northern Anthracite Coal Co., 241 Pa. 55, 88 Atl. 75; Hanson v. Columbia & P. S. R. Co., 75 Wash. 342, 134 Pac. 1058).

In Healy v. Perkins Mach. Co., *supra,* it appeared that the plaintiff while in the employ of the defendant received injuries by the breaking of an emery wheel during an attempt by him and a fellow workman to grind a heavy casting upon it. He was an experienced man, but the court said: "It could not have been ruled as a matter of law that the plaintiff assumed the risk because he continued to work a few seconds after he saw that the emery wheel was 'wabbling'. Whether he appreciated the situation and appreciated the danger in so brief a time was a question of fact for the jury." In Covelli v. Cooper Underwear Co., *supra,* the Wisconsin court say: "A study of the facts in evidence has convinced us that it was a question for the jury as to whether or not the danger to the plaintiff in the performance of this duty was so obvious and his knowledge, information, and experience in respect thereto so limited as to render it necessary that the foreman who directed him to perform this service should have instructed him of such dangers before setting him at this work, and that the court properly submitted this question to the jury." In Union Pac. Ry. Co. v. Jarvi, *supra,* it is said in the opinion by Sanborn, Circuit Judge, that "the dangers, and not the defects merely, must have been so obvious and threatening that a reasonably prudent man would have avoided them in order to charge the servant with contributory negligence." And further: "Ordinarily in actions like the present one, questions of negligence are for the jury. * * * * * * It is only when the facts are undisputed, and are such that reasonable men can fairly draw but one conclusion from

them, that the question of negligence is ever considered one of law for the court."

The case of Tennessee Copper Co. v. Gaddy, *supra,* is quite in point. The plaintiff, a comparatively inexperienced miner, was injured while working in a mine, assisting to break up material previously blasted, and loading it and removing it on tram cars to the shaft. He was working with three other persons in a place dimly lighted by four small lights, one of which was hooked on each of their caps. The blasting was done at a level above the place where these men worked, and while they were at dinner. Before proceeding with their work upon their return they asked the foreman whether the blasting had been finished and he answered that it had, and they thereupon began their work, and a little over an hour later rock fell from above and injured the plaintiff; the attention of the plaintiff and the men working with him having been aroused shortly before the accident by the fall of some small rock and pieces of dirt, causing them to run under a ledge some distance away and remain there a few minutes before returning. It was understood by the men that the falling of such pieces of rock and dirt usually, but not always, preceded the falling of heavier material, and consequently signified danger. The larger rock fell within about five minutes after they returned to work. It was contended that their act in so returning was sufficient to charge the deceased both with the assumption of risk and contributory negligence; and there was some evidence to the effect that there was a rule which required workmen, upon the falling of small pieces of rock and dirt which were called "fines" not to resume work unless and until they notified the proper foreman and received assurance that all was safe, though it was not clear that deceased had notice of that rule. The court observed that the fact of running into a safe place upon the falling of the fines implied that the deceased, as well as the other men, knew that such falling signified danger, but that the action of the men more experienced than the deceased demonstrated that in their

judgment the falling of the fines in that instance was a false alarm, but said: "It is hard to see how a reviewing court can say as a matter of law that the opinions of these miners, especially of the three experienced men, signify that Gaddy consciously or imprudently assumed the risk, or that fair-minded men might not reach different conclusions touching the question of his alleged contributory negligence."

In Western Union Tel. Co. v. Burgess, *supra,* the court say: "It will appear from a statement of the case that there was some evidence tending to show that the defendant in error was an inexperienced servant, and was changed from the work to which he had become accustomed and set at work which involved greater danger, without any warning or instruction as to the safest mode of doing the new work. Under such circumstances, and in this state of the case, we think the question of contributory negligence was a question of fact for the jury to determine. In view of such a state of the case, if the jury should find that the defendant in error was not sufficiently experienced to enable him to do the new work; and that he was neither warned nor instructed as to the proper mode of doing the work, we conclude that it cannot be said as a matter of law that the servant was guilty of contributory negligence in not making an inspection of the pole for himself and in the particular method adopted of sawing off the section of the pole. It could not be said upon the facts of this case, that defendant in error was guilty of negligence as a matter of law, if he supposed the pole was sound, and that he might safely do the work as it was done. If the pole was regarded, upon reasonable ground, as sound, it could not be said that the method of sawing, up to the time the section broke off and fell was an obvious danger to an inexperienced servant without instruction or warning."

In Hanly v. California Bridge & Constr. Co., *supra,* the court say: "Whether the nature of the work to be done by plaintiff and the condition of the tunnel were visible facts, and the dangers of the employment were known to plain-

tiff, were questions of fact as to which there was at least some evidence which should have gone to the jury." The court say in Collins v. Nor. Anthracite Coal Co., *supra*: "The evidence shows that before he began work in the morning of the accident, Collins took a pick and sounded the roof to see if it was safe. It appeared to be safe enough to work under, and with this conclusion his helper agreed, although the result showed that it was mistake. But the question of danger under the circumstances was one of fact for the jury." And in Booth v. Stokes, *supra*, the same court say: "It is true that the employer is relieved from the duty to instruct where the danger is open and obvious, and the employee appreciates the danger, and knows how to avoid it.   *   *   *   *   *   *   Whether under the evidence the defendant should have instructed the plaintiff was a question for the jury."

In the brief of plaintiff in error much weight is placed upon the fact that the defendant in error saw the defect, viz : a crack about or behind the lump of coal that fell described in the former opinion. With reference to this point it is said in White on Personal Injuries in Mines, Sec. 396: "But mere knowledge of a defect in the roof or drift of a mine, is not, usually, sufficient to defeat a recovery for a resulting injury under the doctrine of assumption of risk, but both a knowledge of the defect and of the resulting danger therefrom is also essential, in order to defeat a recovery from such a cause." (See also Gallagher v. Lehberger, *supra;* Ry. Co. v. Jarvi, *supra*).

Several experienced miners having testified that it would require experience to understand and appreciate the danger of the lump of coal falling under the conditions that existed immediately prior to the time that Benedict was injured, or that there was danger of the lump of coal falling after he and his fellow workman had attempted to pry it down with a tamping bar, and it seemed to be solid, and the plaintiff having testified that he believed it to be safe or he would not have returned there to work, although the evi-

dence as to the degree of experience necessary to under-
stand the danger was conflicting, we are convinced that a
proper application of the general rule to the facts required
a submission of the case to the jury, and that neither the
trial court nor this court would be authorized to determine
as a matter of law that the danger was obvious, and that,
therefore, the failure of the company to properly warn and
instruct the defendant in error was not a proximate cause
of the injury. It seems to us impossible to say that reason-
able minds could not differ upon the question.

Counsel for defendant contend that it was error to admit
the testimony of experienced miners to the effect that it re-
quires experience to detect the danger of falling coal in a
mine, and that it would require experience to have detected
and avoided the danger of the falling of the coal which in-
jured the defendant in error. In the first place, the plain-
tiff in error is not in a position to complain of the admis-
sion of that testimony, for if error at all it was first brought
into the case by its counsel during the cross-examination of
George C. Benedict, the father of and a witness for the
plaintiff below. On the direct examination of that witness
he was called upon to testify as to the experience which the
plaintiff had and whether or not he had instructed him re-
specting the manner and methods to be employed in detect-
ing the danger of falling coal. He testified in effect that he
was inexperienced and that he, the witness, had not in-
structed the plaintiff and had not given him any instructions
as to what appearances miners look for in order to detect
such dangers. On cross-examination questions were pro-
pounded and answered as follows: "Q. How much experi-
ence, in your judgment, Mr. Benedict, does it require to be
able to tell that a piece of coal partly detached from the face
of a vein to be dangerous in falling? A. I cannot tell you.
Q. Does it require some experience? A. Yes, sir. Q. How
much? A. I cannot tell you how much. Q. Wouldn't any
person, even if he had never been in a coal mine, who could
see a piece of coal with a crack in it hanging partly detached,

know that it might fall? (The plaintiff objects to the question as irrelevant, incompetent and immaterial; no foundation laid for it, and not proper cross-examination. Objection overruled. Plaintiff excepts). A. I don't think so. Q. You don't believe he could? A. No, sir." This was the first time that the question as to what experience or whether any experience would be required to detect the danger of the falling of a lump of coal such as that which fell and injured the plaintiff was brought into the case. That testimony having been brought out on cross-examination it was referred to on redirect examination and he was asked to explain what he meant by saying that a man might not know the danger from a lump of coal from the mere fact that there was a crack, he answered: "You might see a piece of coal with a crack in it and think it might fall down, and at the same time it was solid and you could not pull it down." The question and answer were not objected to and they were followed without objection by this testimony of the witness: "Q. What test do you apply? A. I generally take a pick and sound it, and see if you can tell by the sounds. Q. Is that the manner employed by an experienced miner to detect any danger that may exist? A. I think so. Q. Does it necessarily follow because there is a crack in the main body of coal there is necessarily danger? A. Well, I cannot say. I am not experienced enough myself." Then on re-cross-examination the witness was asked and answered a question as follows: "Q. Mr. Benedict, isn't it a fact that when you observe a cleavage or crack in a portion of the face of the vein of coal that it has been in some manner leaned from its original position in the vein and loosened to some degree? A. Certainly." This evidence having been permitted, the next witness for the plaintiff, of forty years' experience in coal mining, was asked by plaintiff's counsel the following question: "Q. What experience is necessary, Mr. Brown, for a person to understand and appreciate the danger of coal mining?" An objection to the question was overruled and the witness answered: "Well, sir, a man that understands anything at all in a coal mine soon understands

when he is safe and when he is not." The following questions and answers of that witness then appear in the bill of exceptions: "Q. What tests are necessary in ascertaining the dangers incident to falling coal? A. Well, you could go and take a pick and knock around to see if there is any loose coal. Q. What is the fact, Mr. Brown, as to whether it requires experience and skill in order to detect those dangers? A. Well, an experienced man understands what to do. Q. It requires experience, does it not? A. Yes, sir." The last question was objected to upon the sole ground that it was leading and suggestive, and the objection was overruled.

On cross-examination of the witness Brown the following questions were propounded to him and answered as here stated: "Q. Mr. Brown, will you say to this jury it would require any experience at all for a person of average intelligence to put a blast in a rocky cliff and explode it, and a portion of it is cracked, to have an idea that the cracked portion is liable to fall? Do you mean to swear that requires experience? A. Yes, sir, it takes experience. Q. Assuming there would be a projected portion there and a crack in it, do you think it would require any experience for a person of ordinary intelligence to know it is liable to fall. . A. No." Then immediately upon re-direct examination the witness was asked this question: "Q. Assuming, Mr. Brown, that a piece of coal is projecting from the face, or in the corner of the face; that there is a crack there; that an effort has been made to pry it down and to all appearances it would not move; what would you say as to whether or not it would not require some of the tests as usually applied by experienced coal men to determine that is liable to fall." An objection to the question was overruled and the following was added to it.: "It would take experience to tell whether it would fall or not?" and he answered: "It would take an experienced man."

Similar questions and answers were propounded to other experienced coal miners, some of the questions stating more or less fully the facts of the situation which confronted the plaintiff immediately before he was injured, and some of

such witnesses testified that it would require experience in order to tell whether there was danger of the lump of coal falling.   As said above, this sort of testimony was brought into the case by counsel for plaintiff in error, defendant below, making it proper, if it would otherwise have been improper, for plaintiff's counsel to pursue the same line of inquiry in examining other witnesses competent to speak on the subject.   To have denied that right under the circumstances would unfairly have placed the plaintiff under a serious disadvantage on the trial.   But in our opinion the testimony was not incompetent.   (Silveira v. Iverson, 128 Cal. 187, 60 Pac. 687; Healy v. Perkins Machine Co., *supra*; Hanley v. California Br. & Constr. Co., *supra*; Gill v. Homrighausen, 79 Wis. 634, 48 N. W. 862; Bouthet v. International Paper Co., *supra*; Hamilton v. Spring Valley Coal Co., 149 Ill. App. 10; Henrietta Coal Co. v. Campbell, 211 Ill. 216, 227, 71 N. E. 863; Kelleyville Coal Co. v. Strine, 217 Ill. 516, 75 N. E. 375; Ake v. Pittsburgh, 238 Pa. 371, 86 Atl. 268; Donk Bros. Coal Co. v. Stroff, 200 Ill. 483, 66 N. E. 29; N. Y. Biscuit Co. v. Rouss, 74 Fed. 608, 20 C. C. A. 555; Blumenthal v. Craig, 81 Fed. 320, 26 C. C. A. 427).

It is true that the rule is that where all the circumstances can be fully and adequately described to the jury, and are such that their effect can be estimated by all men, without special knowledge or training, the opinion of witnesses, expert or other, are not admissible.   But the effect of such a situation in the mine as that described by the evidence and confronting the plaintiff just prior to his injury, cannot be estimated or understood by all men for all men are not familiar with the operation of coal mines or with the various conditions that might or might not indicate danger, and are not as capable as experienced miners of determining whether a situation described to them would or would not obviously indicate a danger.   Referring to the general rule, the court, in Kellyville v. Strine, *supra,* say: "It is to be observed, however, that such men, as usually sit upon the jury, are not versed in such matters  and have no common knowledge or information concerning the hazardous employment of

mining coal, or the use of timbers or the methods of looking after a roof in a mine. For this reason, we are not prepared to say that experienced miners may not be allowed to give their testimony as to matters of this kind." In Henrietta Coal Co. v. Campbell, *supra,* the court say: "Certain questions were asked expert miners as to whether, in their judgment, certain conditions as to the roadway rendered it safe or otherwise, and it is claimed this was error, as the subject was one within the common observation of all men. We cannot say such was the case. The roadways and entries of a mine and their adaptability to the use intended are not matters of common knowledge, and we perceive no error in admitting the character of evidence here objected to."

In Blumenthal v. Craig, *supra,* the court say: "One of the issues was whether the broken hood of itself warned the plaintiff of increased danger. The witness, a much more experienced boy, who saw the broken slate, in substance said it did not so impress him. Clearly, this was relevant and proper testimony." Previous to the language quoted, the court had stated that the witness referred to was permitted, against the objection of the defendants, to answer a question as to whether, with the experience he had had, he would have known the broken slate made the machine more dangerous to work upon.

In Silveira v. Iverson, *supra,* an injury was alleged to have been received through the breaking of a defective rope. An objection was raised to this question: "How can it be determined whether a rope has become rotten and unsound?" In sustaining the overruling of the objection the Supreme Court of California say: "Opinion evidence is not always objectionable even from those who are not experts. The exceptions have been often noticed. Witnesses are constantly asked as to distances, as to conditions and manner, when the answers must necessarily consist in opinion. In this case one question in controversy was whether the defendants had been negligent in furnishing proper rope and tackle. This depended to some extent upon the ques-

tion whether the defect was discernible.  The question might have been in different form, but it was proper to inquire whether the defect could have been discovered by the use of ordinary diligence, which was really what was done."

We remain satisfied with the conclusions stated in the former opinion upon the other material questions in the case.  In view of the conclusion reached upon this rehearing that the case was properly submitted to the jury, and that no error was committed in the admission of the evidence above referred to, it follows that we find no reversible error in the record.  The judgment will therefore be affirmed.

SCOTT, C. J., concurs.

BEARD, J., (dissenting).

I do not dissent from the principles of law stated in the opinion of the majority, but am unable to reach the conclusion that they are applicable to the facts of this case, as I read and understand the evidence.  The only persons who saw the conditions of the room in the mine where Benedict and Rotolo were working between the time the shot was fired and the happening of the accident, were those two persons, and they both testified that they saw that the piece of coal which fell and injured Benedict protruded from the face of the vein and that it was cracked therefrom.  Benedict said it was a small crack but did not state what he meant by a small crack.  Rotolo said it was about three inches.  Both stated it was sufficient to admit a bar of sufficient size to be used as a pry.  There was, therefore, no question in the case as to whether or not a man of ordinary intelligence and exercising ordinary care should have discovered the condition, for they did see it.  That Benedict understood and appreciated the fact that there was danger is, to my mind, clearly shown by his own testimony.  While he said he did not understand and appreciate the danger, he said he attempted to pry it down partly to protect himself and partly to get the coal down.  If he realized from the conditions he discovered that it was necessary to do some-

thing to protect himself he certainly appreciated that there was danger. The sounding test is shown by the evidence to be one method, but not the only method, by which a miner is enabled to discover whether or not a shot has loosened coal from the body of the vein, but which has not fallen. Had Benedict been fully instructed in the use of that test and had employed it in this instance and had discovered thereby that the piece of coal had been loosened, and had then attempted to pry it down and it did not come—and there is no evidence that in that case he would have done anything else—how much more would he have understood or appreciated the danger than he did from what he testified he actually saw? For instance—one going upon a railroad track in front of a train he sees approaching and is struck and injured by the train, is hardly in a position to claim that he was injured because the whistle was not blown or the bell rung. Benedict having been warned of the danger from what he saw and deeming that warning sufficient to require him to take steps to protect himself, is not in a position to claim that by the use of another method in which he was not instructed he could have discovered the same liability to injury. I am convinced that upon the record in this case that the evidence is entirely insufficient to establish that the failure to instruct him in the application of the sounding test was the proximate cause of his injury, and that the former opinion was just and should be adhered to.

ON PETITION FOR REHEARING.

POTTER, JUSTICE.

Another petition for rehearing has been filed in this case, this time by counsel for plaintiff in error. We think it unnecessary to again enter upon a discussion of the rules of law applicable to the facts in this case. Upon due consideration of the points made in the brief in support of the present application for rehearing we remain satisfied with the conclusion announced upon a rehearing of the cause in the opinion filed May 16, 1914, resulting in an affirmance of the judgment. (140 Pac. 1013). Counsel, however, say in

their brief now under consideration that they are unable to find in said last decision that the court had receded from the position stated in the opinion rendered upon the original hearing that there was a total failure of proof on the part of the plaintiff below to recover. It was not said in the opinion disposing of the case on the first hearing that there was a "total" failure of proof. It was said and held, after discussing the evidence and considering its effect, that the plaintiff had failed to prove that the company's negligence, if any, was the proximate cause of his injury; intending thereby to decide not that there was an entire lack of evidence, but that the evidence was insufficient. It was certainly intended by the later opinion to recede from the position that, as a matter of law, the evidence failed to establish a right to recover, and we think that appears from a fair reading of the opinion thus criticized. In that opinion, after referring to the previous decision and the ground thereof, we said: "The court is now of the opinion that the question whether the danger was obvious and was appreciated, or should have been appreciated, by the plaintiff, was, upon the evidence, a question of fact for the jury, and was properly submitted to the jury by the trial court." That statement is followed by a discussion of the evidence, showing a conflict therein as to matters to be considered in determining whether the failure to warn the plaintiff was a proximate cause of his injury, and in concluding that discussion it was said: "The evidence on the question was conflicting, and, as we are now convinced, was properly submitted to the jury." At another place in the opinion it was said:

"Several experienced miners having testified that it would require experience to understand and appreciate the danger of the lump of coal falling under the conditions that existed immediately prior to the time that Benedict was injured, or that there was danger of the lump of coal falling after he and his fellow workman had attempted to pry it down with a tamping bar, and it seemed to be solid, and the plaintiff

having testified that he believed it to be safe, or he would not have returned there to work, although the evidence as to the degree of experience necessary to understand the danger was conflicting, we are convinced that a proper application of the general rule to the facts required a submission of the case to the jury, and that neither the trial court nor this court would be authorized to determine, as a matter of law, that the danger was obvious, and that therefore the failure of the company to properly warn and instruct the defendant in error was not a proximate cause of the injury. It seems to us impossible to say that reasonable minds could not differ upon the question."

This was said after calling attention to the general rule as to directing verdict in this class of actions, and that a court is not authorized to say, as a matter of law, that the danger was obvious, unless it is shown by the evidence without conflict that an ordinarily prudent man or one with the experience of the injured servant ought to have noticed it, and reviewing some of the cases in which that rule was applied.

Counsel quote form the above quoted statement the words, "that therefore the failure of the company to properly warn and instruct the defendant in error was not a proximate cause of the injury," and say that they do not understand what is meant thereby. The meaning is, we think, apparent, viz: that neither the trial court nor this court would be authorized to determine, as a matter of law, that the failure of the company to properly warn and instruct was not a proximate cause of the injury. No doubt the thought might have been better expressed, but that is not a ground for rehearing.

The points involved in the case have received the most careful consideration by this court and we do not see that any useful purpose could be subserved by another rehearing. The present application will therefore be denied.

*Rehearing denied.*

SCOTT, C. J., concurs.

BEARD, J. (concurring). I concur in denying a further rehearing in this case for the reason that, in my opinion, it is doubtful if a second rehearing should be granted in any case. In this case a rehearing was granted and the questions involved were fully and ably presented, and a majority of the court arrived at a conclusion with which, on a reconsideration of the points on the present application, they are still satisfied. Further argument would unduly protract the litigation.